IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
JACOB FRYDMAN

                               Plaintiff,

            -against-

ELI VERSCHLEISER, MULTI CAPITAL GROUP OF
COMPANIES, LLC, ERIC FISCHGRUND, RAUL
DELFORNO, OPHIR PARNASI, ALEX ONICA, FRANK
CHANDLER, CAESARS ENTERTAINMENT
CORPORATION, and DOES 1 through 10 inclusive.

                                Defendants.

------------------------------------------------------------------------X

**JUDGE DANIELS**

**14 CV 8084**

Civil Action

**COMPLAINT
JURY DEMAND**

Plaintiff JACOB FRYDMAN ("Frydman" or "Plaintiff"), complaining of Defendants

ELI VERSCHLEISER ("Verschleiser"), MULTI CAPITAL GROUP OF COMPANIES, LLC

("Multi Group"), ERIC FISCHGRUND ("Fischgrund"), RAUL DELFORNO ("Delforno"),

OPHIR PARNASI ("Parnasi"), ALEX ONICA ("Onica"), FRANK CHANDLER ("Chandler"),

CAESARS ENTERTAINMENT CORPORATION ("Caesars"), and DOES 1 - 10 ("Does")

(Verschleiser, Fischgrund, Multi Group, Delforno, Parnasi, Onica, Chandler, Caesars, and Does

are sometimes referred to individually as "Defendant" and collectively as "Defendants") alleges,

as follows:

## NATURE OF THE ACTION

1. This is an action for civil damages under the Racketeer Influenced and Corrupt

Organizations Act (18 U.S.C. § 1961 et. Seq.) ("RICO"), civil damages under the Federal

Lanham Act, 15 USC §1501, et seq. (the "Lanham Act"); civil damages for false designations of

origin, false descriptions, and dilution in violation of Federal Trademark Law, (15 USC §1125)

("False Descriptions"); civil damages for Unfair Competition in violation of Federal Trademark

Law, 15 USC §1125(a)) ("Unfair Competition"); civil damages under the Anti-cybersquatting Consumer Protection Act (15 U.S.C. §1125(D)) (the "Anti-cybersquatting Act"), for violations of Article 5 of The N.Y. Civil Rights Law - Right Of Privacy - Misappropriation of a Person's Name or Likeness; for Common Law Unfair Competition; for Fraud; for Trade Libel; for Libel Per Se;  for Misappropriation Of Trade Secrets; for Injurious Falsehoods; for Tortious Interference With Existing Business Relations; for Tortious Interference With Prospective Business Relations/Economic Advantage; for Intentional Infliction Of Emotional Distress; for Civil Conspiracy; for Unreasonable Intrusion Upon Seclusion; for Prima Facie Tort; for Negligence/Innkeeper Liability; for Breach Of Contract, for punitive and exemplary damages and for injunctive relief barring Defendants' culpable conduct as described in this Complaint.

## INTRODUCTION

2.  Plaintiff Jacob Frydman is the CEO and Chairman of United Realty Trust Incorporated, a public non-traded Real Estate Investment Trust, and CEO and Chairman of United Realty Advisors, L.P. a private real estate investment and advisory firm which acts as an external advisor to United Realty Trust. Frydman is also a principal in numerous businesses that invest in, develop, own, operate, manage, and/or otherwise deal with real estate which he operates as the "United Realty Group of Companies". In addition, Frydman is chairman of the board of Cabot Lodge Securities, Inc., a nation-wide FINRA member broker dealer which acts as the dealer manager for the offering of securities by United Realty Trust to the public.

3.  United Realty Trust is currently in process of a public offering of over $1 Billion of its common stock.

4.  Plaintiff brings this action against his former partner and now competitor, Eli Verschleiser, and Verschleiser's agents, associates, co-conspirators and those persons who Verschleiser used

and/or uses as his instrumentalities, each of whom is responsible in some manner for the conduct alleged in this Complaint and Plaintiff's damages as more fully detailed herein.

5.  Motivated by his desire to destroy Plaintiff and his businesses, Verschleiser is a culpable person who conducts the affairs of an enterprise, Multi Group, through a pattern of racketeering, by, *inter alia*, committing numerous criminal acts of computer fraud, mail fraud and wire fraud (as well as other predicate acts more fully set forth herein), in a way which proximately has, and continues to, cause injury to Plaintiff.

6.  As more fully detailed herein, Verschleiser embarked on his criminal mission to seek to destroy Frydman and his businesses almost from the minute they split as partners by engaging in a scheme to deceive the public by misusing Plaintiff's name and likeness and the name and marks of Plaintiff's businesses to defraud the public, including, without limitation, prospective investors in Plaintiff's various investment funds, including, without limitation, United Realty Trust, which is currently raising in excess of $1 Billion in a public offering of its common stock.

7.  Verschleiser and his co-conspirators sought to injure Frydman and his businesses by, among other things:

   a.  taking control of Plaintiff's company servers and exchange mail servers, and for more than ten days, copying confidential information, deleting company data, locking out Frydman and several of his employees from accessing their email accounts and company servers; hacking into the Frydman's email exchange servers to identify persons with whom Frydman was doing business and then creating anonymous web sites from which Verschleiser and/or his co-conspirators sent anonymous emails to persons with whom Frydman was doing business encouraging them not to transact business with Frydman in violation of the

Computer Fraud and Abuse Act (18 U.S.C. § 1030), the Wire and Electronic Communications Interception and Interception of Oral Communications Act (18 U.S.C. § 2520), the Stored Wire and Electronic Communications and Transactional Records Access Act (18 U.S.C. § 2707) and New York Penal Law Article 156 (relating to offenses involving computers), all as more particularly detailed in a related case filed in this court, and styled *United Realty Advisors, LP, et al v. Eli Verschleiser*, Case No. 14 CV 5903;

b. physically threatening Frydman's employees; hiring disgruntled and/or discharged ex-employees of Frydman for the sole purpose of disparaging Frydman; seeking to coerce or bribe employees and ex-employees of Frydman and his businesses to make false claims against Frydman and bring unsupportable lawsuits premised on false calms and fictitious manufactured "evidence" against Frydman;

c. asserting false and fraudulent claims against Frydman and the board of directors of United Realty Trust to third party investors in United Realty Advisor, L.P. and seeking to coerce said investors to assert false claims against Frydman and bring unsupportable lawsuits against Plaintiff;

d. filing a lawsuit in state court against Frydman on false claims and committing perjury in connection with said case, for the sole purpose of disparaging Frydman in the public media (the "Verschleiser Dismissed Lawsuit") and mailing or transmitting false and fraudulent statements to the media with respect to said lawsuit, including, without limitation, a written statement asserting that Frydman committed Fraud, which statement was quoted in the *Real Deal* magazine;

e. making false and fraudulent claims against Frydman in advertisings, websites, domains, sub-domains, blogs and internet postings under a variety of names that all infringe upon Frydman's name, likeness, and the names and marks of his companies;

f. operating as part of a common enterprise to perpetuate Internet scams on unsuspecting prospective business associates and investors of Frydman using Frydman's name and likeness and the name and marks of Frydman's businesses through an ever changing coterie of websites, domains, sub-domains, blogs and internet postings that utilize the same or similar templates to generate the same fake news stories, fake reports, fake testimonials, fake blogs, fake twitter accounts and fake LinkedIn accounts which are intended to, and which have caused prospective investors and others prospective business associates of Frydman from doing business with Frydman and his businesses;

g. creating advertisement flyers which label Frydman as a "Fraudster" and "Lowlife" and transmitting or transporting those advertisement flyers through interstate commerce to one or more co-conspirator in Las Vegas Nevada, to be distributed under each hotel room door of approximately 1,000 industry executives attending the National Real Estate Investment Securities ("REISA") Conference at Casers Palace in Las Vegas Nevada on September 14 through 16, 2014, where Frydman was a sponsor and featured speaker, and which advertisement flyers drove the recipients to a fake blog entitled "Jacob Frydman Fraud" which accused Frydman of being a "fraudster", "lowlife" and a "criminal";

h. creating advertisement posters which label Frydman as a "fraudster" and "lowlife" and transmitting or transporting those advertisement posters through interstate commerce to one or more co-conspirator in Las Vegas Nevada, to be plastered over the real convention posters displayed in the Caesar's Palace Convention Center during the REISA Conference at Casers Palace on September 14 through 16, 2014, where Frydman was speaking, and which advertisement posters encouraged the viewers of those advertisement posters to go to a fake blog entitled "Jacob Frydman Fraud" which accused Frydman of being a "fraudster", "lowlife" and a "criminal".

8. Through Defendants' illegal and tortious acts as herein set forth, Plaintiff has been denied valuable business opportunities, has suffered damage to his business and property, and has suffered irreparable damage to his business reputation and goodwill.

**Related Case**

9. This case is related to *United Realty Advisors, LP, et al v. Eli Verschleiser*, Case No. 14 CV 5903 in the Southern District of New York (the "Related Case", which was initiated by United Realty Advisors, L.P. and Frydman against Verschleiser and several of his co-conspirators for civil damages under the Computer Fraud and Abuse Act (18 U.S.C. § 1030) (the "CFAA"), civil damages under the Wire and Electronic Communications Interception and Interception of Oral Communications Act (18 U.S.C. § 2520) (the "ECPA"); civil damages under the Stored Wire and Electronic Communications and Transactional Records Access Act (18 U.S.C. § 2707) (the "SCA"), civil damages for violations of New York Penal Law Article 156 (relating to offenses involving computers), and related common law claims.[1]

---

[1] In addition, Plaintiff and others have initiated a state court action against defendant Verschleiser and his affiliates

**JURISDICTION AND VENUE**

10. This Court has original jurisdiction over Plaintiffs' RICO, Lanham Act, False Descriptions, Unfair Competition and Anti-cybersquatting Act claims pursuant to 28 U.S.C. § 1331.

11. This Court has supplemental jurisdiction over Plaintiff's state law and common law claims pursuant to 28 U.S.C. § 1367(a), which claims are so related to Plaintiff's federal claims as to form part of the same case or controversy.

12. Venue in this district is proper pursuant to section 1965(a) because Defendants reside, are found, have an agent, or transact their affairs in this District. Venue and personal jurisdiction is also proper under § 1965(b) in this forum because the ends of justice require that any defendant residing in another District be brought before this Court. Venue is proper under §1391(a) and (b) in that a substantial part of the events or omissions giving rise to the claims occurred in this District. Venue is also proper under principles of pendent venue because all claims arise out of the same nucleus of operative facts.

**PARTIES**

13. Plaintiff Jacob Frydman is an individual, maintains his principal place of business within this District, and is a citizen and resident of the State of New York.

---

styled *JFURTI v. Verschleiser*, 650803/2014 (Mar. 12, 2014) (the "Frydman State Action"). That case is a breach of contract case comprising of four counts. The first count seeks a declaratory judgment that defendant Verschleiser breached section 10 of the Separation Agreement by disparaging Frydman and the Frydman entities; the second cause of action seeks a declaratory judgment that defendant Verschleiser breached section 10 of the contract by soliciting or recruiting former or current employees of United Realty; the third cause of action seeks a declaratory judgment that defendant Verschleiser failed to restore all exchange servers, web hosting and the entities computer servers to their status on or before November 15, 2013 by December 5, 2013, the deadline required for him to do so pursuant to section 25 of the contract; and the fourth count seeks preliminary and permanent injunctions enjoining Verschleiser, pursuant to paragraph 11 of the contract from further disparaging plaintiffs. Except for costs of that action and attorney's fees which the successful party is entitled to under the contract, the Frydman State Action seeks no monetary damages.

14. Defendant Eli Verschleiser is a citizen and resident of the State of New York with an address at 3501 Avenue T, Brooklyn, NY 11234.

15. Defendant Multi Group, is a New York limited liability company, which on information and belief, is an entity used by Defendant Eli Verschleiser to invest in and develop real estate, and which operates as an umbrella organization for other entities owned and/or controlled by Defendant Verschleiser, including, without limitation, Multi Capital, LLC, a New York limited liability company, and/or Multi Capital Group I, LLC, a New York limited liability company, and/or Multi Investments, which on information and belief, is a fictitious name through which Defendant Eli Verschleiser and/or Multi Capital, LLC and/or Multi Capital Group I, LLC, operate their various businesses, each having their principal place of business at 44 Wall Street, Second Floor, New York, New York, 10005.

16. Defendant Eric Fischgrund is an individual operating as a sole proprietor doing business as "FischTank", a "Marketing and PR Consultancy Provided by Eric Fischgrund" with his principal place of business at 44 Wall Street, Second Floor, New York, New York, 10005, and is, on information and belief, a citizen and resident of the State of New Jersey.

17. Defendant Raul Delforno was the head of information Technology for United Realty until February 14, 2013, and is a citizen and resident of the State of New York with an address at 2952 West 33rd Street, Apartment 2D, Brooklyn, NY 11224.

18. Defendant Ophir Parnasi is a former IT executive with United Realty, and is a citizen and resident of the State of New York with an address at 254 West 98th Street, Apartment 64, New York, NY 10025.

19. Defendant Alexandru Onica is a former IT consultant for United Realty, and a citizen and resident of the State of New York with an address at 2828 45th Street, Astoria, NY 11103.

20. Defendant Frank Chandler is a former sales executive for United Realty, and a citizen and resident of the State of Massachusetts with an address at 20 Overlook Park, Newton, MA 02459.

21. Defendant Caesars Entertainment Corporation is a Delaware Corporation with an office at 120 Wooster St, New York, NY 10012.

22. Plaintiff is ignorant of the true names and capacities of the defendants sued in this Complaint as Does 1 through 10, inclusive, and therefore sues these defendants by such fictitious names. Plaintiff will amend this Complaint to allege the true names and capacities of the Doe defendants when ascertained. Each of the fictitiously named defendants is responsible in some manner for the conduct alleged in this Complaint, and Plaintiff's damages are actually and proximately caused by the conduct of such defendants.

23. Based upon information and belief, Plaintiff alleges that at all times mentioned herein, Defendants Fischgrund, Delforno, Parnasi, Onica, Chandler and Does 1 through 10, were each employed by, consultants to, or acting as agents of, and/or were co-conspirators of, Defendants Verschleiser and/or Multi Group, and each was acting as an agent and/or employee or co-conspirator of each other, and at all times mentioned was acting within the course and scope of said agency and/or employment with the full knowledge, permission, and consent of each other. Defendants Verschleiser, Multi Group, Fischgrund, Delforno, Parnasi, Onica, Chandler and Does 1 through 10, are collectively referred to as the "Class A Defendants").

24. Defendant Caesars owns and operates Caesar's Hotel and Convention Center in Las Vegas Nevada, and furnished a vehicle for the commission of the pattern of racketeering conducted by the Class A Defendants, and/or knowingly, recklessly or negligently permitted one

or more of the Doe 1 – 10 Defendants to trespass upon their property to facilitate the illegal and tortious activities complained of herein.

## FACTS COMMON TO ALL COUNTS

25.  In 2011 Plaintiff Frydman and Defendant Verschleiser, who had known each other for several years as a result of their involvement in New York real estate, but who had not previously conducted any business together, joined forces to sponsor United Realty Trust Incorporated, a public non-traded Real Estate Investment Trust (the "REIT") through which they planned to raise in excess of $1 Billion of equity for investment in real estate.

26. In connection therewith and in pursuit of their various other business interests Frydman and Verschleiser formed more than 20 entities[2] (the "Entities"), and as of December 2, 2013 Verschleiser and Frydman, directly and indirectly through a variety of affiliates, jointly owned, operated and/or controlled the Entities, including the public REIT and United Realty Advisor, LP, the external advisor, to the REIT ("United Realty").

27. Prior to December 2, 2013 Frydman was CEO and Chairman, and Verschleiser was President and a member of the board of directors, of both the REIT and the Advisor, and Frydman and Verschleiser held management positions with each of the other Entities.

---

[2] Those entities included United Realty Advisor Holdings, LLC; United Realty Advisor, L.P.; United Realty Trust Incorporated; United Realty Partners, LLC; URA Property Management, LLC; United Realty Capital Markets, LLC; URP Investments, LLC; URTI GP, LLC; URTIGP Investments, LLC; URA Property Management, LLC; URTI LP, LLC; Riverside United Title Agency, LLC; Prime United Holdings, LLC; Cabot Lodge Securities, LLC (f/k/a Prime United Securities, LLC); CL Wealth Management, LLC; CL General Agency, LLC; Cabot Lodge Lending, LLC;   American United Securities, LLC;   AUS Holdings, LLC;   United 866 Management, LLC; United Realty 866 UN Plaza, LLC; and United Realty Capital Operating Partnership, L.P.

28. On December 2, 2013, as a result of Verschleiser's failure to adequately perform his Company Duties, among other things, and pursuant to the various operating or partnership agreements of the Entities, Frydman, removed Verschleiser as a manager of United Realty Advisor Holdings, LLC, and Frydman, as the manager of the general partner of United Realty, terminated Verschleiser's employment with United Realty for "cause" by serving a termination notice upon Verschleiser. A copy of the removal notice and the termination notice are attached hereto as Exhibit "N".

29. Unbeknownst to Frydman, Immediately after being served with the termination notice, Verschleiser wrongfully and without authorization directly, and/or with the assistance of others, accessed and hijacked United Realty's hosted email exchange server, internet domain hosting servers and computer networks, giving Verschleiser unfettered control over same, and the ability to hack into and intercept the emails of United Realty employees, to create backups of United Realty email data and trade secrets, to download and copy all of such data, and then delete all of said data from United Realty's email exchange server, permanently depriving United Realty of its important confidential and/or proprietary information, data and trade secrets.

30. Because the REIT is a public company with full SEC reporting obligations, the removal of Verschleiser as manager of the Advisor and the termination of his employment as president of the Advisor triggered a four-day time clock to file a Form 8-K with the Securities and Exchange Commission disclosing said events.

31. Verschleiser did not wish to have the basis of his termination publicly disclosed and sought to negotiate a consensual arrangement which would include the rescinding of the termination notice in exchange for his voluntary resignation from the Board of Directors of the United Realty and the REIT.

32. On December 3, 2013, Verschleiser and Frydman and certain of their respective affiliates, negotiated, and just after midnight on December 4th, executed a Sale and Purchase of Membership Interest Agreement (the "Separation Agreement"). A copy of the Separation Agreement is attached hereto as Exhibit "A".

33. Pursuant to the Separation Agreement, in exchange, *inter alia,* for Frydman agreeing to make certain payments to Verschleiser and rescinding the termination and removal notices, Verschleiser voluntarily resigned from each and every position or office he held as a manager, officer, director or employee of United Realty, the REIT and each of the other Entities jointly owned by his and Frydman's affiliates (as set forth in the Separation Agreement collectively referred to as the "Entities"), and Verschleiser and his affiliates sold and transferred to Frydman's affiliates all of Verschleiser's direct and indirect ownership interest in all but two of the Entities (the "Sold Entities").

34. As a result of the Separation Agreement, as of December 4th, 2013, Verschleiser ceased being a manager, officer, director and/or employee of any of the Entities, and had no further right, title or interests in any of the Sold Entities, and agreed that he would not represent himself as being an employee, officer, manager, member, director, agent or representative of any of the Entities for any purpose.

35. Verschleiser also agreed at paragraph 10 of the Separation Agreement that for a period of eighteen (18) months following the Separation Date: (i) he will not, alone nor in concert with others, directly or indirectly, employ or solicit the employment of, or assist others in employing or soliciting the employment of, any individual employed by any of the Entities; and (ii) will not disparage or encourage or induce others to disparage Frydman or his businesses.

36. Verschleiser also agreed to restore control of the company's technology back to Frydman, and to restore Frydman and United Realty's other employees mailboxes which Verschleiser had wrongfully disabled, and agreed at Section 25 of the Separation Agreement "to restore all exchange server, web hosting and the Entities' computer servers to their status on or before November 15, 2013 and to provide Frydman with all owner and administrative passwords by the close of business on December 5, 2013".

37. Notwithstanding Verschleiser's undertaking pursuant to Section 25 of the Separation Agreement, Verschleiser failed and refused, notwithstanding numerous demands from Frydman, to restore the United Realty email exchange server, web hosting servers and computer network to their status prior to November 15, 2013, as a result of which Frydman and other employees of United Realty were shut out of their email accounts, were unable to send or receive any company emails, could not access the administrative area of their hosted email exchange server known as "HostPilot", could not gain access to the United Realty hosted internet domain servers nor the United Realty computer network.

38. Almost from the minute he signed the Separation Agreement Defendant Verschleiser embarked on a mission to destroy Plaintiff and his businesses through criminal, illegal and tortious acts as detailed hereafter, with the goal of causing existing and prospective investors, business associates and selling agents to elect not to invest with, or transact business with, Frydman and his businesses.

39. Verschleiser pursued his criminal enterprise through a pattern of racketeering activity affecting interstate commerce for the sole purpose of causing harm and damage to Frydman, and injuring Frydman's business relationships, with the goal of destroying Frydman's businesses and causing Frydman significant monetary and emotional damage.

**FIRST PREDICATE ACTS**

**CRIMINAL VIOLATIONS OF THE COMPUTER FRAUD AND ABUSE ACT (18 U.S.C. § 1030), THE WIRE AND ELECTRONIC COMMUNICATIONS INTERCEPTION AND INTERCEPTION OF ORAL COMMUNICATIONS ACT (18 U.S.C. § 2520), THE STORED WIRE AND ELECTRONIC COMMUNICATIONS AND TRANSACTIONAL RECORDS ACCESS ACT (18 U.S.C. § 2707) (THE "SCA"), AND NEW YORK PENAL LAW ARTICLE 156 (RELATING TO OFFENSES INVOLVING COMPUTERS)**

40. On December 2, 2013, immediately after being fired from United Realty, Verschleiser wrongfully and without authorization accessed and hijacked United Realty's hosted email exchange server by illegally accessing "Host Pilot", the administrative settings portion of the United Realty exchange server and removing Frydman as the account owner and giving himself unfettered control over the entire United Realty email exchange server.  Verschleiser made his alias, 2good2b4@att.net, the new owner of the account, then blocked Frydman from having any access thereto and disabled Frydman's and other employees' email.  While in complete control of United Realty's technology, through December 10, 2013 (the "Initial Infiltration Period"), Verschleiser set the stage for an intensive, long-term, organized, criminal conspiracy to wrongfully access Plaintiffs' confidential and proprietary information and trade secrets, intercept email communications, and conduct fraudulent activities in connection with United Realty's email exchange server, networks and domains or subdomains with the intention of causing harm to Plaintiff.

41. During the Initial Infiltration Period Verschleiser illegally created back-ups of email account mail boxes, proprietary information, confidential data and trade secrets, and, after downloading and copying same, permanently deleted same from United Realty's computers. Verschleiser also created aliases and distribution list members through which he would continue to have undetectable access to United Realty's email exchange server and be able to intercept

plaintiffs' data long after the Initial Infiltration Period.  In fact through at least mid-March 2014 (the "Ongoing Interception Period") unbeknownst to Plaintiffs, Verschleiser and his co-conspirators[3], without authorization, accessed Frydman's email account at will, at times logging into Frydman's email account as themselves or aliases which they created, and at times using various services provided by companies that enable the hiding, masking and/or encryption of their IP identities, logging in to Frydman's email account as Frydman but from IP addresses used by Verschleiser and his agents, so as to disguise themselves as Frydman, for the purpose of infiltrating Frydman's email account un-noticed, and intercepting Frydman's emails.

42. The actions of Verschleiser and his co-conspirators described in the preceding two paragraphs constitute violations of the CFAA, the ECPA, the SCA and New York Penal Law Article 156 (relating to offenses involving computers)[4], all as more specifically detailed in the timeline of events through July 15, 2014, attached hereto as Exhibit "B" and incorporated herein, and which criminal activities constitute some of the predicate acts giving rise to the RICO claims being asserted in this complaint.

43. Verschleiser and/or his agents and co-conspirators, using services provided by Surfeasy, a company which provides those wishing to hide their on-line identities by masking their IP addresses, established anonymous internet domains or subdomains and email accounts and identities, and specifically "informedconsumer@mail.com" and "friendsofEli@gmx.com," which Verschleiser created solely as a means to facilitate his criminal enterprise by transmitting

---

[3] In express breach of paragraph 10 of the Separation Agreement Verschleiser solicited United Realty's employees, including Raul Delforno, then a United Realty employee and head of technology for United Realty, to become employed by Verschleiser while still employed by United Realty, to act as his secret mole within United Realty to assist in undertaking illegal activities by giving Verschleiser on-going access to United Realty's exchange server and other networks, as well as to act as Verschleiser's IT employee in setting up Verschleiser's and his new organizations -- Multigroup, Magenu and OurPlace NY's -- technology.

[4] Plaintiff does not assert any claims against any of the defendants under the CFAA, the ECPA, the SCA, or New York Penal Law Article 156, each of which is separately dealt with in the Related Case.

"anonymous" disparaging emails to persons who Frydman was dealing with, and whose identities could only have been obtained by hacking into Frydman's email account.

44. By virtue of Verschleiser's illegal hacking Verschleiser learned that Frydman was negotiating a $10 Million loan to finance the acquisition of a medical office building in Myrtle Beach, South Carolina and the identity and email addresses of the bankers with whom he was dealing.    Verschleiser also discovered that Frydman was negotiating a new corporate headquarters lease for space in the building at 180 Maiden Lane, as well as the identity and email address of the sub-landlord from which United Realty was then in final negotiations to execute a very favorable $1.4 million sublease at below market rent.

45. Armed with this information on February 10th and 11th, 2014, Verschleiser sent highly disparaging "anonymous" emails to the bankers and the sub landlord each stating: "As an informed consumer we wish you to be one as well.  You are about to enter into an agreement with an individual who alledgedly [sic] does anything and everything NOT to pay his vendors and or circumvent any written agreement he or his affiliated entities have.  As long as it is to his benefit he "may" pay in partial, but as soon as he chooses to he will 100% stop paying and choose to litigate the matter.  Do a simple Nexus Lexus search and look closely into his litigous [sic] nature and background.  Do a google search "Jacob Frydman Fraud" "Jacob Frydman Lawsuit" and think twice.  Ask yourself, why so many company [sic] names over such a short period of time?  Every two to 4 years a new "venture"?  Be an informed consumer, dont [sic] get hurt.  Speak to ANY ex employee, any ex creditor, form bank to local phone company, from office supplies company to landlords.  The record speaks for itself.  Speak not to someone currently doing business with Mr Frydman, speak to 3 former companies that did, former employees, or partners that have.  Be an informed consumer, dont [sic] get hurt.

46. As a result of the foregoing Verschleiser caused the loss of the $10 Million loan, and the loss of the favorable $1.4 million sublease.

## SECOND PREDICATE ACTS

### VIOLATION OF THE HOBBS ACT (18 U.S.C. 1951), ACTS OF EXTORTION, ATTEMPTED EXTORTION, FILING FALSE CLAIMS IN A STATE COURT LAWSUIT, FALSIFYING EVIDENCE AND COMMITTING PERJURY IN CONNECTION THEREWITH

47. During the fall of 2013 Frydman and Verschleiser were attempting to acquire 866 UN Plaza, for $200 million in a joint venture with another firm, with a view to convert that building to commercial condominiums.

48. As a result of Verschleiser's failure to raise his portion of the equity for that deal, the joint venture partner had the right to keep 100% of the deal for themselves, which they elected to do.

49. On December 16, 2013 Frydman negotiated a $2 million fee to be paid to one of the Sold Entities for work performed on that transaction.

50. Verschleiser had no rights to that fee or any portion thereof, having given up all rights thereto under the December 4th Separation Agreement.

51. Notwithstanding that Verschleiser had no rights to that fee or any portion thereof, on the morning of December 18, 2013, Verschleiser phoned Frydman seeking to extort Frydman. As a result of his illegal hacking into Frydman's email, Verschleiser knew that Frydman had instructed Citibank to return all of the funds invested by third party investors for that transaction, yet Verschleiser threatened that unless Frydman agreed to pay Verschleiser $500,000.00 Verschleiser would file a lawsuit against Frydman that afternoon making false claims that Frydman had failed to return investor funds raised by Frydman for that transaction and leak it to

the press to embarrass Frydman.

52. Verschleiser's acts constitute extortion in violation of the Hobbs Act, 18 U.S.C. 1951, which states: "Whoever in anyway or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both".

53. "Extortion" means "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." "Fear" includes threatened fear of economic loss.

54. Frydman refused to be extorted by Verschleiser. So Verschleiser filed his lawsuit[5] based on false and fraudulent claims, asserting that Frydman failed to return investor funds in the amount of $4.9 million, when in fact, Verschleiser knew that Frydman had previously instructed Citibank to immediately return those funds by wire transfer.

55. In fact, Verschleiser, who learned that Frydman instructed Citibank to return those funds by wire transfer because he had intercepted private emails between Frydman and his bankers at Citibank as a result of Verschleiser's illegal hacking into Frydman's email account, attempted to coerce Citibank to not make those wire transfers (thereby hoping to give credence to his false accusations) by causing his lawyers to write to Citibank, demanding that they ignore Frydman's instructions because Verschleiser wrongfully asserted rights to those funds. See copy of letter from Verschleiser's lawyer to Citibank attached hereto as Exhibit "C".

56. Because Verschleiser had no rights to the accounts which held the funds which were

---

[5] Styled as *DJZV Holdings, LLC et al vs. Frydman, et al*, Case no. 654346/2013 in the Supreme Court State of New York, New York County.

being returned to investors, having given them up in the Separation Agreement, Citibank refused to honor his lawyers' demands, and the funds were returned to the investors before Verschleiser's lawsuit based on false and fraudulent claims was actually filed.

57. Verschleiser nonetheless initiated his fraudulent lawsuit with the filing of an order to show cause seeking a temporary restraining order and preliminary injunction. Justice Sherwood denied the motion for a temporary restraining order and set a briefing schedule between December 18, 2013 and January 13, 2014, and scheduled a hearing to be held before Judge Bransten, who is the judge to which that case was assigned.

58. In papers filed on December 18, 2013 by Frydman opposing Verschleiser's motion for a TRO, and throughout the hearing on the TRO Frydman, raised the fact that Verschleiser was removed as a manager and his employment as president of United Realty was terminated on December 2nd by Frydman based on a lengthy list of "bad boy" acts, including, without limitation, unauthorized distributions of Company funds to himself and/or his affiliates, waste of company assets, excessively absenteeism, committing fraud in connection with the application of one of the Entities with the Florida Division of Securities by misrepresenting that he had not been arrested and charged of a crime when in fact he was arrested and charged with a crime, by wasting company assets, by failing attend board of director meetings of the REIT, and a litany of other willful acts of misconduct or gross neglect.

59. At no time from the filing of the said lawsuit through the briefing schedules, did Verschleiser deny that he was removed and fired by Frydman on December 2, 2013. Specifically, not once in any of the filings, responsive filings, or hearings held in that matter did Verschleiser assert that Verschleiser was not removed by Frydman and fired on December 2, 2013 as asserted by Frydman, or that the removal and termination notices which were attached as

exhibits to Frydman's memorandum were inaccurate, nor did Verschleiser at any time through the January 13, 2014 hearing assert that it was not Verschleiser who was removed and terminated on December 2nd, but rather, that it was Frydman who was removed and terminated by Verschleiser prior thereto.

60. At the conclusion of the January 13th hearing, Judge Bransten denied the motion for preliminary injunction and granted Frydman's motion to dismiss (based on an arbitration agreement), and dismissed the case with prejudice.

*Verschleiser's Manufactures Fake Evidence*

61. Verschleiser appealed Judge Bransten's ruling, and filed a motion for reargument. In his motion for re-argument, for the first time, Verschleiser miraculously produced "new evidence" in the form of knowingly false and fraudulent documents dated November 29, 2013, and entitled "Notice of Removal," and "Termination of Employment" (*see DJZV Holdings LLC et al., v Jacob Frydman et al.,* Index No. 654346/2013 Motion Seq. 003 Verschleiser Aff. Exhibits C and D at Docket No. 62 and 63) pursuant to which Verschleiser claimed that it was not Frydman who removed or terminated Verschleiser on December 2nd, but rather it was Verschleiser who removed and terminated Frydman first, on November 29th. A copy of the November 29th letters are attached hereto as Exhibit "E",

62. On February 18, 2014 Verschleiser submitted a sworn affidavit in connection with his Motion for Reconsideration of the court's Dismissal of his lawsuit – attaching the two letters dated November 29, 2013, and swearing, under oath that:

> "On November 29, 2013, following a series of breaches, misrepresentations, and "bad boy acts" … Frydman was removed for cause as a Manager of United Realty Holdings, LLC. … In addition, the General Partner of United Realty Advisors, LP terminated Frydman's employment with United Realty Advisors, LP. After being served with the Notice Removal for Cause and the Notice of Termination of Employment, Frydman allegedly served me of with substantially similar notices". (See Verschleiser Affidavit

attached hereto as Exhibit "D").

63. Verschleiser's sworn affidavit was false and fraudulent and constitutes the perpetration of a fraud on the court as well as perjury.

64. At his deposition in Frydman's State Court Action against him, on July 23, 2014 in a span of just several seconds Verschleiser changed his story four times! He first testified that he "hand delivered" the November 29th Letters to Frydman at their offices on November 29th, then seconds later he testified that he "did not hand deliver" them to Frydman, but "put them on [Frydman's] desk on November 29th," then seconds later he testified that it was not on November 29th as he was not in the office on November 29th, but that he did it "over that weekend" of November 30 through December 1st, and then seconds later Verschleiser changed his story yet again, admitting that it could not have been over that weekend because he was not in the office over that weekend. Finally Verschleiser concluded that he "did not remember" when he allegedly put those letters on Frydman's desk. A copy of Verschleiser's deposition transcript is attached hereto as Exhibit "G".

65. The November 29th Letters were each created by Verschleiser to stand for the proposition that it was NOT Verschleiser who was terminated by Frydman on December 2, 2013, but rather it was Verschleiser who terminated Frydman FIRST, on November 29, 2013.

66. In truth, the November 29th Letters did not exist on November 29th as claimed by Verschleiser.

67. They were fraudulently created by Verschleiser on or after December 3rd, 2013 after Verschleiser received, and then copied Frydman's December 2nd termination notices to Verschleiser.