**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

JACOB FRYDMAN,

                Plaintiff,

                vs.

ELI VERSCHLEISER, MULTI CAPITAL
GROUP OF COMPANIES, LLC, ERIC
FISCHGRUND, RAUL DELFORNO, OPHIR
PARNASI, ALEX ONICA FRANK
CHANDLER, CAESARS ENTERTAINMENT
CORPORATION and DOES 1 though 10
inclusive,

                Defendants.

Index No.: 14-cv-8084 (JGK)


**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR A**
**TEMPORARY RESTRAINING ORDER**

**Reed Smith LLP**
599 Lexington Avenue
New York, New York 10022
(212) 521-5400

*Attorneys for Defendants*
*Eli Verschleiser, Raul Delforno, Ophir Pinhasi and Alex Onica*

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................. 1

PROCEDURAL HISTORY ..................................................................... 3

    A.   Frydman's First Lawsuit Against Verschleiser .................................. 3

    B.   Frydman Files Two Federal Lawsuits Alleging that Verschleiser Disparaged Him and Hacked into His Email ........................................ 4

    C.   Frydman Seeks an Emergency Stay of His Own State Court Action ...................... 5

    D.   Frydman Is Sanctioned by the State Court ..................................... 5

    E.   The Limited Partner Action ................................................... 6

    F.   The Present TRO ............................................................. 8

ARGUMENT ................................................................................. 11

I.    The TRO Impermissibly Seeks to Enjoin a Pending State Court Action ...................... 11

II.   The TRO Is an Impermissible Prior Restraint on Speech ............................... 13

III.  The TRO Impermissibly Seeks to Silence Statements Made in the Course of Litigation . 14

IV.  Frydman Has Produced No Evidence that Verschleiser Was Responsible for the Disparaging Statements he Wants Removed ............................................. 15

V.   Frydman Is Not Entitled to An Injunction Based On the Purported Misappropriation of United Realty's Trade Secrets .................................................... 16

    A.   Frydman Cannot Show Irreparable Harm ......................................... 16

    B.   The Injunction Seeking to Suppress Evidence of Frydman's Misconduct Should Be Denied Because the Documents Are Not Protectable Trade Secrets ................................................................... 17

VI.  Frydman's Request to Amend His Complaint and Add Parties Should Be Denied; The Court Should Instead *Sua Sponte* Dismiss this Action Because It Is Duplicative of His Other Federal and State Court Actions .............................................. 18

VII. The TRO Papers Should Not Be Sealed ............................................. 21

CONCLUSION .............................................................................. 21

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                              **Page(s)**

*Adams v. Cal. Dep't of Health Servs.*,
    487 F.3d 684 (9th Cir. 2007) ...........................................................................................18, 19

*Aioi Nissay Dowa Ins. Co. v. ProSight Specialty Mgmt. Co.*,
    No. 12 CIV. 3274 JPO, 2012 WL 3583176 (S.D.N.Y. Aug. 21, 2012) .................................21

*Alexandria Real Estate Equities, Inc. v. Fair*,
    No. 11 CIV. 3694 LTS, 2011 WL 6015646 (S.D.N.Y. Nov. 30, 2011)..................................21

*Atl. Coast Line R. Co. v. Bhd. of Locomotive Eng'rs*,
    398 U.S. 281 (1970)............................................................................................................11, 12

*Azkour v. Haouzi*,
    No. 11 CIV. 5780 RJS KNF, 2012 WL 1658349 (S.D.N.Y. May 11, 2012) ..........................15

*Brado v. Vocera Commc'ns, Inc.*,
    14 F. Supp. 3d 1316, 1320 (N.D. Cal. 2014) .........................................................................18

*BrandAid Mktg. Corp. v. Biss*,
    No. 03 CIV. 5088(WHP), 2003 WL 21998972 (S.D.N.Y. Aug. 21, 2003) ...........................13

*Davis v. Norwalk Econ. Opportunity Now, Inc.*,
    534 F. App'x 47 (2d Cir. 2013) ..............................................................................................20

*Diamond v. Frydman*,
    14-cv-8742, ECF No. 9 (S.D.N.Y Nov. 20, 2014) .................................................................10

*DiGennaro v. Whitehair*,
    467 F. App'x 42 (2d Cir. 2012) .........................................................................................18, 20

*EVUNP v. Frydman*,
    650841/2014, ECF No. 1 (Sup. Ct. N.Y. County Mar. 14, 2014) ...........................................7

*EVUNP v. Frydman*,
    650841/2014, ECF No. 67 (Sup. Ct. N.Y. County Dec. 15, 2014) .........................................6

*Faiveley Transp. Malmo AB v. Wabtec Corp.*,
    559 F.3d 110 (2d Cir. 2009)....................................................................................................17

*Fishoff Family Foundation v. Frydman*,
    653838/2014 (Sup. Ct. N.Y. County Dec. 15, 2014)...................................................... *passim*

*Fitzgerald v. First E. Seventh St. Tenants Corp.*,
    221 F.3d 362 (2d Cir. 2000)................................................................20

*Gaming Mktg. Solutions, Inc. v. Cross*,
    No. 07 Civ. 4624, 2008 WL 858183 (S.D.N.Y. Apr. 1, 2008)................14

*Houston v. Manheim-N.Y.*,
    475 F. App'x 776 (2d Cir. 2012)........................................................20

*Jacob Frydman v. David Lichtenstein*,
    590603/2012 (Sup. Ct. N.Y. County 2012) .........................................9

*JFURTI v. Verschleiser*,
    650803/2014, ECF No. 1 (Sup. Ct. N.Y. County Mar. 12, 2014) .................3, 4, 8, 9

*JFURTI v. Verschleiser*,
    650803/2014, ECF No. 46 (Sup. Ct. N.Y. County June 13, 2014)............5

*Kelly v. Albarino*,
    485 F.3d 664 (2d Cir. 2007).............................................................15

*Lugosch v. Pyramid Co. of Onondaga*,
    435 F.3d 110 (2d Cir. 2006)............................................................21

*Lusk v. Vill. of Cold Spring*,
    475 F.3d 480 (2d Cir. 2007).............................................................11

*Mazurek v. Armstrong*,
    520 U.S. 968 (1997).......................................................................11

*Metro. Opera Ass'n v. Local 100, Hotel Emps. and Rest. Emps. Int'l Union*,
    239 F.3d 172 (2d Cir. 2001)........................................................13, 14

*Pathways, Inc. v. Dunne*,
    329 F.3d 108 (2d Cir. 2003).............................................................12

*Rodriguez v. DeBuono*,
    175 F.3d 227 (2d Cir. 1999).............................................................15

*Smith v. Bayer Corp.*,
    131 S. Ct. 2368 (2011)....................................................................11

*Synergy Advanced Pharm., Inc. v. CapeBio, LLC*,
    No. 10 CIV. 1736(SAS), 2010 WL 2194809 (S.D.N.Y. June 1, 2010)...................17

*U.S. Steel Corp. Plan for Emp. Ins. Benefits v. Musisko*,
    885 F.2d 1170 (3d Cir. 1989)............................................................13

*United States v. Cancer Treatment Ctrs. of Am.*,
    350 F. Supp. 2d 765 (N.D. Ill. 2004) ......................................................................18

*WA Route 9, LLC v. PAF Capital LLC*,
    651688/2012 (Sup. Ct. N.Y. County 2012) ...........................................................13

**Statutes**

28 U.S.C. § 2283 .......................................................................................................11

**Other Authorities**

Julia Marsh, *Real-estate honcho 'stiffs' contractors over measly amounts*, N.Y.
    Post (Nov. 17, 2014), *available at* http://nypost.com/2014/11/17/real-estate-
    honcho-stiffs-contractors-over-measly-amounts/ .....................................................1

Order, *United Realty*, 14-cv-5903, ECF No. 17 .........................................................19

## PRELIMINARY STATEMENT

In the past several years, Mr. Frydman initiated or was involved in over 90 lawsuits or arbitrations with business partners, contractors, vendors and affiliates.[1] Although Mr. Frydman frequently represents himself *pro se,* as he does here, he is a licensed attorney who practiced for more than fifteen years. Mr. Frydman uses his knowledge of the court system to bully opposing parties and their counsel with frivolous litigation.

The present action is one of five lawsuits that Frydman filed this year in state and federal court against Eli Verschleiser, and one of three concerning the same topic – Verschleiser's allegedly derogatory statements.[2] The complaints he files routinely contain hundreds of paragraphs and tens of claims.

Although this action has been dormant since Frydman filed the complaint in early October (indeed, he did not serve Verschleiser), on December 30, 2014Frydman moved for an emergency TRO before this Court.

The purported impetus for this urgent relief is a state court action filed on December 15 by the limited partners of one of Frydman's businesses – United Realty. The limited partners

---

[1] A list of these lawsuits is attached as Exhibit 1 to the Kadosh Affirmation. This level of litigation is excessive for a Fortune 500 company, let alone an individual running a small real-estate investment firm.

[2] The five lawsuits are listed in Section A of Exhibit 1: *JFURTI v. Verschleiser*; *Winter Investors, LLC v. Panzer*; *United Realty v. Verschleiser*; *Frydman v. Rosen*, and the present action. The three lawsuits involving derogatory statements are *JFURTI, United Realty v. Verschleiser* and the present action. Frydman is the plaintiff in five additional lawsuits filed in New York State and Federal court this year. *See* Exhibit 1. In addition, he is embroiled in eighteen litigations and arbitrations arising out of the purchase and renovation of his $1.5 million home. *See* Section C to Exhibit 1 and Julia Marsh, *Real-estate honcho 'stiffs' contractors over measly amounts*, N.Y. Post (Nov. 17, 2014), *available at* http://nypost.com/2014/11/17/real-estate-honcho-stiffs-contractors-over-measly-amounts/.

alleged that Frydman was wasting corporate assets by spending most of his time in vendetta litigations with Verschleiser and other parties, and that he was planning on misappropriating ▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ one of United Realty's most valuable assets.

Instead of responding to these allegations in state court, Frydman came to this Court to essentially enjoin the limited partners, and their attorney, from prosecuting their state court action. Such an injunction is barred by the Anti-Injunction Act, and would impermissibly meddle with the state court's prosecution of its action.

The proposed TRO is also sweeping in its scope, and unmistakably seeks to chill efforts to bring claims against Frydman or defend against his claims in existing and future litigation. It would enjoin Verschleiser, his in-house counsel, the limited partners and their lawyer from making any statements about Frydman to a dozen groups of people, including any person associated with David Lichtenstein (another target of Frydman's litigations), any person employed by any broker-dealer or registered investment advisor, or any member of the media or any website. Such a chilling injunction is a prior restraint on speech, and barred by the First Amendment. The proposed TRO would further order Verschleiser to take down dozens of internet posts for which there is no evidence that he is responsible.

Verscheiser has already spent thousands of dollars defending similar claims brought by Frydman in state and federal court; the presiding state court judge sanctioned Frydman and characterized his litigation as abusive.

The Court should deny Frydman's TRO because the over-broad relief sought violates the First Amendment and the Anti-Injunction Act, there is no evidence that Verschleiser is responsible for the derogatory statements, and because Frydman's unclean hands in abusing the court systems precludes his ability to seek equitable relief. In addition to denying the TRO,

Defendants respectfully ask the Court to exercise its inherent powers to *sua sponte* dismiss this action because Frydman has impermissibly split the claim with his previously filed case before this Court, *United Realty v. Verschleiser.*

## PROCEDURAL HISTORY

### A.  Frydman's First Lawsuit Against Verschleiser

Frydman filed his first lawsuit against Verschleiser in State Court on March 12, 2014. *See* Compl., *JFURTI v. Verschleiser,* 650803/2014, ECF No. 1 (Sup. Ct. N.Y. County)(the "Frydman State Action").[3] In that action, Frydman alleged that Verschleiser violated the terms of their separation agreement by, *inter alia*, hacking into his computer and using the information he obtained to make disparaging statements about Frydman. Frydman further alleged that Verschleiser was inducing people to initiate frivolous lawsuits against him.

A month later, on April 14, Frydman applied for an emergency temporary restraining order on Passover Eve, despite the absence of any new facts necessitating the "emergency" relief, and knowing that Verschleiser and his in-house counsel are observant Jews. Justice Bransten, the presiding state court judge, denied Frydman's request, stating that "it's Passover, and I do agree that it is an outrage that it's brought today when, indeed, this has been going on since January."  4/14/14 State Tr. 19:5-9, Kadosh Aff., Ex. 2.

After suffering a string of defeats in his state court action – including the denial of his TRO, the exclusion of improperly obtained evidence, and being repeatedly reprimanded by

---

[3] In order not to inundate the Court with the myriad court filings referenced in this brief, Defendants have only attached the filings that are not easily publicly available, such as transcripts or letters to the Court not posted to the docket. The documents not attached here can be found attached to declarations of Steven Cooper in support of Defendants' motion to dismiss in *United Realty v. Verschleiser*, 14-cv-5903, ECF Nos 27 and 34, which is also before this Court.

Justice Bransten for his improper conduct – Frydman offered to withdraw his state lawsuit.

When Verschleiser insisted that such withdrawal be with prejudice, Frydman declined, and

instead initiated another two litigations in federal court concerning the same purported

disparagement and hacking.

### B. Frydman Files Two Federal Lawsuits Alleging that Verschleiser Disparaged Him and Hacked into His Email

The first lawsuit, *United Realty v. Verschleiser,* 14-cv-5903, was filed in this Court on

July 30, 2014. *See* Compl., ECF. No. 1. The 356-paragraph, 19-count complaint alleges that

Verschleiser hacked into Frydman's e-mail and sent disparaging messages to potential business

partners, thereby violating a panoply of state and federal hacking statutes. Defendants moved to

dismiss that action as duplicative of the Frydman State Action under *Colorado River,* and the

motion was fully briefed on December 23, 2014.

The current lawsuit was filed on October 7, 2014,[4] the same day that Frydman obtained

leave from the Court at the pre-motion hearing in *United Realty* to amend the complaint in that

action. Frydman never informed the Court that he intended to file another lawsuit the same day

in the same Court.[5]  The 131-page, 21-count Complaint in this action also alleges that

---

[4] October 7, 2014 was the day before the Jewish holiday of *Sukkot.*

[5] Mr. Frydman engaged in similar conduct in state court. Justice Bransten permitted Mr. Frydman to file two

discovery-related motions—one for him personally, and one for his corporate entities. The court ordered the parties

to appear personally in order to set a briefing schedule for these motions. An hour before the hearing, Mr. Frydman

filed a third discovery-related motion but neglected to tell Justice Bransten of this fact during the hearing. *See*

10/15/14 State Tr. 4:12-5:4, Kadosh Aff., Ex. 3.  Justice Bransten admonished Frydman, stating: "The third

discovery related motion, by the way, contrary to the express order limiting the parties to one motion each . . . that

one was particularly egregious because it seeks, it was actually filed half an hour after we met and in complete,

Verschleiser hacked into Frydman's email and made disparaging statements. This time, however, the hacking and disparagement serve as predicate acts for a vast "criminal conspiracy" under RICO. Although this action was filed nearly three months ago, Frydman did not bother to serve Verschleiser or most of the other defendants in this action.

### C.  Frydman Seeks an Emergency Stay of His Own State Court Action

On October 15, 2014, Justice Bransten issued a series of evidentiary and discovery-related rulings that were largely unfavorable to Frydman. The court then scheduled a hearing for Frydman's motion for a preliminary injunction for January 8, 2015, and ordered the parties to submit pre-hearing briefs on December 5, 2014. On December 2, *six weeks* after Justice Bransten rendered her decision, and three days before the pre-hearing briefs were due, Frydman moved in the First Department for an "emergency" stay of the hearing for the emergency injunctive relief that he previously so urgently sought.

### D.  Frydman Is Sanctioned by the State Court

As the above pattern of litigation makes clear, Frydman's sole goal in initiating these actions is to harass Verschleiser and cause him to incur substantial legal fees in defending these frivolous lawsuits. Indeed, he expressly admitted as much to counsel: At a meet and confer in the Frydman State Action in June 2013, Frydman told counsel that he would not produce certain documents in an accessible format because he wanted to generate more work for counsel and hoped to cause Verschleiser to "run up six-figure [legal] bills each month" defending his lawsuits. *See* Kadosh Aff. ¶¶ 11-12, *JFURTI v. Verschleiser*, 650803/2014, ECF No. 46 (Sup. Ct.

---

contrary to what I ordered, and without even having to bother or have the courtesy to tell the Court about it." *Id.* at 4:12-24.

N.Y. County June 13, 2014). Frydman further told counsel that because he was representing himself *pro se*, these litigations were "costing him nothing." *Id.*

Justice Bransten recognized that Frydman was abusing the legal system by filing frivolous lawsuits and motions. 10/15/14 State Tr. 11:21-21, Kadosh Aff., Ex. 3 ("You cannot abuse the system that I work under."); *Id.* at 12:2-4 ("I don't want to be abused any longer. The reason why I am taking this stance, this is abusive to the Court."). She ultimately ordered Frydman to pay Verschleiser's attorneys' fees and costs incurred in responding to three successive motions which intentionally violated the court's rules. *See* Decision and Order on Motion, *EVUNP v. Frydman*, 650841/2014, ECF No. 67 (Sup. Ct. N.Y. County Dec. 15, 2014); 11/12/14 State Tr. 7:3-8, Kadosh Aff., Ex. 4.

There are currently three additional sanctions motions (that we know of) pending against Frydman. In one of them, *Frydman v. Rosen*, Defendants moved for sanctions after demonstrating with documentary evidence that Frydman knowingly misrepresented to the Court his basis for initiating that lawsuit. *See* Mem. of Law in Supp. of Defs. Mot. to Dismiss and Sanctions at 17-20, *Frydman v. Rosen*, 159833/2014, ECF No. 9 (Sup. Ct. N.Y. County Dec. 15, 2014).

### E.  The Limited Partner Action

On December 15, 2014, several limited partners of United Realty (not including Verschleiser), one of Frydman's companies, initiated an action alleging that Frydman was wasting corporate assets by spending substantially all of his time, and the time of his in-house counsel, Daniel Edelman, litigating frivolous, *personal* vendetta litigations, including the eighteen litigations involving his home, and the five against Verschleiser. *See Fishoff Family Foundation v. Frydman*, 653838/2014 (Sup. Ct. N.Y. County Dec. 15, 2014) (the "Limited

6

Partner Action").[6] On December 16, the limited partners moved for a TRO enjoining Frydman from ███████ one of United Realty's most valuable assets.

The limited partners stated that they would be irreparably harmed ████████████████ because Frydman intended to improperly use all the ███████████ to satisfy personal debts. Further, because Frydman is judgment-proof, the limited partners would be unable to collect their share of ███████████ through litigation. After learning that ████████████ ███████████ for several weeks ████████████████████████, the parties and Justice Scarpulla, the presiding state court judge agreed that a TRO was unnecessary, and set a conference for January 7, 2015.

The Limited Partner Action contains a series of detailed allegations concerning Frydman's litigious habits and his use of shell corporations to avoid paying judgments. Although all this information is a matter of public record, it had never previously been compiled in one single accessible document. Frydman immediately sought to seal the entire docket (as he does here) claiming that the Complaint incorporated confidential information about ███████████. David Wright, the limited partners' attorney, agreed to redact any references to ████████ that Frydman claimed was confidential. After Wright signed a stipulation to this effect, Frydman apparently altered the stipulation, so that it now stated that the entire docket was sealed. Wright immediately wrote to the Court seeking an emergency hearing concerning Frydman's alteration. *See* Letter from David O. Wright to Justice Scarpulla (Dec. 18, 2014), Kadosh Aff., Ex. 5. As Justice Scarpulla had already left for the holidays, a hearing on Frydman's alteration of the stipulation will be held on January 7, 2015.

---

[6] The state court docket has been sealed pending submission of redacted versions of the filing. Because those redacted versions have not yet been filed, Defendants are unable to attach the filings in the Limited Partner Action.

Although Verschleiser is a not a limited partner in United Realty, he has a substantial economic interest in the outcome of the Limited Partner Action. First, Verschleiser sued Frydman in March 2014, alleging that he was fraudulently induced into signing the separation agreement which divested him of co-ownership, with Frydman, of United Realty. *See* Compl ¶¶ 36-56, *EVUNP v. Frydman*, 650841/2014, ECF No. 1 (Sup. Ct. N.Y. County Mar. 14, 2014). If Verschleiser prevails in this action, the separation agreement will be abrogated and Verschleiser will be restored as co-owner of United Realty. Second, even if the separation agreement is upheld, it provides that Verschleiser is entitled to fifty percent of all distributions that Frydman receives from United Realty.  Further, Verschleiser raised much of the money for United Realty from his friends and family, and has an interest in ensuring Frydman does not dissipate its assets.

### F.  The Present TRO

On December 29, 2014, two weeks after the Limited Partner Action was filed, Frydman notified Verschleiser that he would be seeking a TRO the following day in this action that had lain dormant since the Complaint was filed in October. Verschleiser's counsel immediately asked Frydman to provide them with a set of papers, or even the subject of matter of the TRO. Frydman refused, telling counsel that they would "receive a set of the papers in court tomorrow."[7]

---

[7] Frydman's decision to file an emergency TRO right before New Year's Day was similar to the filing of his unsuccessful TRO in the Frydman State Action before Judge Bransten on the eve of Passover. And Frydman acted similarly in connection with the secrecy of the TRO that he sought in the Frydman State Action. There, Verschleiser's counsel asked Frydman prior to the hearing to send counsel a copy of any disparaging statements Frydman believed were authored by Verschleiser. Frydman refused, telling counsel to "go search the internet" for the statements. After Frydman admitted that he made such statements, the Court chastised Frydman, stating that "the glib answer 'Look it up on the Internet' is not good enough."  4/29/14 State Tr. 11:4-6, Kadosh Aff., Ex. 6.

Frydman's present TRO seeks to shut down the state court Limited Partner Action (as well as others) by preventing the limited partners and their counsel from making any statements about the ███████████, which is the subject of the state court action.

The TRO also seeks to muzzle Verschleiser, his in-house counsel, the limited partners and their attorney from making any statements concerning Frydman to a dozen categories of people, including any person associated with David Lichtenstein (another target of Frydman's litigations), any person employed by a broker-dealer or registered investment advisor, any member of the media or any website.

The TRO's inclusion of an absolute bar on any contact between Verschleiser and David Lichtenstein, who has no involvement in any of these litigations, is no coincidence. In 2012, Lichtenstein sued Frydman for fraud in connection with certain loan guarantees; Frydman responded by countersuing Lichtenstein for disparagement, as is his pattern when confronted with allegations of his misconduct. *See Jacob Frydman v. David Lichtenstein,* 590603/2012 (Sup. Ct. N.Y. County 2012); *see also* Kadosh Aff., Ex. 1, Section E. On October 14, 2014, Verschleiser was served with a subpoena by Lichtenstein to testify and provide documents in those actions. *See* Kadosh Aff., Ex. 8. Frydman's TRO barring any contact between Lichtenstein and Verschleiser concerning Frydman is a backdoor attempt at quashing this subpoena.

The TRO also seeks much of the same emergency injunctive relief that Justice Bransten denied Frydman in state court in April 2014. As in the Frydman State Action, Frydman seeks an injunction prohibiting Verschleiser from making disparaging statements about Frydman and directing Verschleiser to take down derogatory internet postings that he supposedly authored. *Compare* Subparts (c) – (e) to Frydman's Proposed Order to Show Cause *with* Subparts (a) – (d)

to the Emergency Order to Show Cause, *JFURTI v. Verschleiser,* ECF No. 13 (Apr. 14, 2014),

Kadosh Aff., Ex. 7.

In the state action, Justice Bransten denied Frydman's TRO because there was no

evidence that Verschleiser was the author of those statements, stating:

> But the problem that you have, sir, is, while you tell me, with a great deal of
> conviction -- and I'm not saying you're not convinced, and maybe you're right.
> But, while you tell me that it is your nemesis, Eli Verschleiser, who's done this to
> you and disparaged you in this way and caused you harm and all the other bad
> things, so far, the way you presented your case, there is no proof that Mr.
> Verschleiser is the person who did this.  4/29/14 State Tr. 24:21-25:4, Kadosh
> Aff., Ex. 6.

Here, Frydman similarly provides no additional evidence to this Court that Verschleiser was

responsible for the derogatory statements which would justify the entry of a TRO.

The TRO also seeks the destruction of purported trade secrets that Al Ackerman, a

limited partner and former Chief Compliance Officer of Cabot Lodge Securities, a broker-dealer

indirectly owned by United Realty, allegedly sent to Verschleiser. The issue of the purported

confidentiality of these documents is presently before Justice Scarpulla in the Limited Partner

Action.  Frydman has not demonstrated any imminent irreparable harm from this purported

misappropriation.

Finally, Frydman seeks to add Mr. Verschleiser's attorney, Mr. Gulko, and the limited

partners' attorney, Mr. Wright, as Defendants to this action,[8] seeks leave to file an amended

complaint and seeks expedited discovery.

---

[8] This is not Frydman's first attempt at using lawsuits against counsel as a means of attempted intimidation. In

another series of lawsuits against a different business partner, Frydman asserted third-party claims for aiding and

abetting breach of fiduciary duty, tortious interference and abuse of process against Reed Smith and the individual

counsel involved. *See* Answer ¶¶ 258-290, *Diamond v. Frydman*, 14-cv-8742, ECF No. 9 (S.D.N.Y Nov. 20, 2014).

Frydman's purported basis for these claims is that Mr. Verschleiser and Reed Smith "conspired" with the Diamonds

## ARGUMENT

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). "To obtain a preliminary injunction a party must demonstrate: (1) that [he or she] will be irreparably harmed if an injunction is not granted, and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation, and a balance of the hardships tipping decidedly in its favor." *Lusk v. Vill. of Cold Spring*, 475 F.3d 480, 485 (2d Cir. 2007). Frydman's application falls far short of this exacting standard.

### I.     The TRO Impermissibly Seeks to Enjoin a Pending State Court Action

Frydman's TRO is an attempt at using this Court to inappropriately interfere with and enjoin the ongoing state-court Limited Partner Action. Such an injunction is prohibited by the Anti-Injunction Act, 28 U.S.C. § 2283.

The Act "is an absolute prohibition against enjoining state court proceedings, unless the injunction falls within one of three specifically defined exceptions." *Atl. Coast Line R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 286 (1970). The exceptions, none of which are relevant here, are: if the injunction is (a) expressly authorized by Congress, (b) necessary "in aid of" the federal court's jurisdiction, or (c) to "protect or effectuate" the federal court's judgments. *See Smith v. Bayer Corp.*, 131 S. Ct. 2368, 2375 (2011). As the Act "rests on the fundamental constitutional independence of the States and their courts," "[a]ny doubts as to the proprietary of a federal injunction against state court proceedings should be resolved in favor of permitting the

---

to "injure Frydman and his business interests" by initiating "false and fraudulent litigation against Frydman."  *Id.* at 262, 265.

state courts to proceed in an orderly fashion to finally determine the controversy." *Atl. Coast Line,* 398 U.S. at 287, 297. Thus, the Act bars any injunctive relief that "would interfere, directly or indirectly, with pending state proceedings." *Pathways, Inc. v. Dunne*, 329 F.3d 108, 113 (2d Cir. 2003). Finally, a plaintiff may not seek to evade the Act's restrictions by enjoining a party to a state-court action, rather than the action itself. "It is settled that the prohibition of [the Act] cannot be evaded by addressing the order to the parties or prohibiting utilization of the results of a completed state proceeding." *Atl. Coast Line*, 398 U.S. at 287.

Frydman's TRO broadly seeks to enjoin Verschleiser, his in-house counsel, the Limited Partners and their counsel (the "Verschleiser Parties") from disseminating disparaging content about Frydman. *See* Proposed Order to Show Cause, Subpart (c). The Limited Partner Action would fall within the ambit of this provision.

The TRO also seeks to prevent the Verschleiser Parties from "directly or indirectly . . . using or disseminating" any of United Realty's proprietary or confidential information, which expressly includes the ███████████. *See* Proposed Order to Show Cause, Subpart (a). The Limited Partner Action seeks an injunction of ███████████, and would therefore fall within ambit of this provision as well.

The TRO further seeks to enjoin the Verschleiser Parties from "making any contact . . . relating to Frydman" with a list of a dozen groups of people, including David Lichtenstein, any investor in United Realty, any person employed by any broker-dealer or registered investment advisor, or any member of the media or any website. *See* Proposed Order to Show Cause, Subpart (b). This injunction, among other things, would prevent the limited partners and their attorney from obtaining information to support their action. Significantly, the bar on contact with Lichtenstein would prevent Verschleiser from testifying and responding to a subpoena issued by

Lichtenstein in an ongoing state court action, *WA Route 9, LLC v. PAF Capital LLC*, 651688/2012 (Sup. Ct. N.Y. County 2012).

Because the TRO would prevent the limited partners and their attorney from prosecuting their pending state court action, and because the TRO seeks to improperly quash a subpoena in another state court action, it is barred by the Anti-Injunction Act. *See BrandAid Mktg. Corp. v. Biss*, No. 03 CIV. 5088(WHP), 2003 WL 21998972, at *3 (S.D.N.Y. Aug. 21, 2003) (Anti-Injunction Act barred injunction seeking to enjoin individuals from making certain statements where the state court action "deals with the same core issues of the validity and legality" of the transaction as issue in the federal action); *U.S. Steel Corp. Plan for Emp. Ins. Benefits v. Musisko*, 885 F.2d 1170, 1175 (3d Cir. 1989) (reversing district court injunction that obstructed and interfered with ongoing state court action).

## II.     The TRO Is an Impermissible Prior Restraint on Speech

The proposed TRO seeks extraordinarily broad injunctive relief enjoining the Verschleiser Parties from "making any contact . . . relating to Frydman" with a list of a dozen groups of people, including any person associated with David Lichtenstein (another target of Frydman's litigations), any person employed by any broker-dealer or registered investment advisor, or any member of the media or any website. *See* Proposed Order to Show Cause, Subpart (b).

It further prohibits the Verschleiser Parties from in any way "disparaging or disseminating any disparaging content" concerning Frydman "in any forum." *See* Proposed Order to Show Cause, Subpart (c).

These broad injunctions must be denied as they are impermissibly vague and a prior restraint on the Verschleiser Parties' First Amendment rights. *Metro. Opera Ass'n v. Local 100, Hotel Emps. and Rest. Emps. Int'l Union*, 239 F.3d 172 (2d Cir. 2001). In *Metropolitan Opera,*

the Second Circuit reversed a district court's injunction prohibiting a union from "engaging in fraudulent or defamatory representations" about the Met because the injunction was too "vague as to what the Union may say and what statements might lead to a finding of contempt of court." *Id.* at 178. The court further noted that the injunction was a prior restraint on the union's First Amendment rights, and that such a restraint "comes . . . with a heavy presumption against its constitutional validity."  *Id.* at 176.

The injunction that Frydman seeks here is considerably broader and vaguer than the one the Second Circuit struck down in *Metropolitan Opera.* First, Frydman seeks to limit the Verschleiser Parties' ability to make any statements about him to an almost limitless group which includes: all members of the media, any website and any broker-dealer or registered investment advisor. Second, Frydman seeks to enjoin the making or dissemination of "disparaging" statements in any forum; yet the Second Circuit rejected the narrower injunction against "defamatory" or "fraudulent" statements. As such, Frydman's TRO must be denied. *Id.*; *see also Gaming Mktg. Solutions, Inc. v. Cross*, No. 07 Civ. 4624, 2008 WL 858183, at *6 (S.D.N.Y. Apr. 1, 2008) (citing *Metropolitan Opera*, denying injunction barring defendant from having any contact with two of plaintiff's clients; plaintiff "made no attempt [showing] that this case presents the kind of 'extraordinary circumstances' that would justify the imposition of an injunction and the resulting prior restraint on [defendant]'s speech.")

### III.    The TRO Impermissibly Seeks to Silence Statements Made in the Course of Litigation

In addition to enjoining the Limited Partner action, Frydman expressly seeks to prevent Verschleiser from making any statements or taking any actions to further an involuntary bankruptcy that Frydman believes Verschleiser is planning. Frydman Decl. ¶¶ 11-12.

14

However, the statements made in connection with the Limited Partner Action or any other action that Verschleiser or anyone else may initiate cannot be enjoined because statements made in connection with a lawsuit are *per se* privileged and cannot form the basis of a disparagement claim. This privilege has been described by the Second Circuit as "the broadest of possible privileges and any matter which, by any possibility, under any circumstances, at any stage of the proceeding, may be or may become material or pertinent is protected by an absolute privilege even though such matter may be ineffectual as a defense." *Kelly v. Albarino*, 485 F.3d 664, 666 (2d Cir. 2007). As such, Frydman's request for a TRO to suppress statements concerning these litigations must be denied. *Id.* (dismissing claim arising from statements made in affidavit because such statements are protected "by the absolute privilege that applies to statements made by participants in judicial proceedings"); *Azkour v. Haouzi*, No. 11 CIV. 5780 RJS KNF, 2012 WL 1658349, at *7 (S.D.N.Y. May 11, 2012) (holding that it is likely that defamation claim has no merit because "a participant in a judicial proceeding who makes statements in connection with that proceeding is entitled to an absolute privilege with respect to the statements made").

## IV. Frydman Has Produced No Evidence that Verschleiser Was Responsible for the Disparaging Statements he Wants Removed

Subsections D and E of the proposed TRO ask the Court to direct Verschleiser "to take all actions necessary" to remove a litany of allegedly disparaging posts concerning Frydman from the internet. Addendum C identifies 81 such websites.

A moving party seeking a "mandatory" injunction, that is, an injunction that commands action rather than merely prohibits it, is held to even higher standard of proof: "[W]here 'the injunction sought will alter rather than maintain the status quo,' the movant must show [a] 'clear' or 'substantial' likelihood of success." *Rodriguez v. DeBuono*, 175 F.3d 227, 233 (2d Cir. 1999).

15

Here, Frydman has neither shown any evidence that Verschleiser is responsible for these statements nor demonstrated that he has a clear likelihood of success on these claims. This lack of evidence is particularly damning because Frydman has been conducting discovery in his parallel state action since April 2014, and still has not uncovered any evidence.

### V.   Frydman Is Not Entitled to An Injunction Based On the Purported Misappropriation of United Realty's Trade Secrets

#### A.   Frydman Cannot Show Irreparable Harm

Subsection (a) of the TRO seeks to enjoin the Verschleiser Parties "from in any way, directly or indirectly" disclosing proprietary information of United Realty, which expressly includes documents concerning ███████ and certain financial statements that were included in the Limited Partner Action. As discussed above, the issue of the purported confidentiality of these documents is before Justice Scarpulla in the Limited Partner Action.  As such, this request would serve to interfere with and enjoin the state court action, and is thus barred by the Anti-Injunction Act.

The request should also be denied because Frydman cannot demonstrate that he faces imminent irreparable harm from the disclosure of these documents.

*First,* any harm that Frydman purportedly suffered from the disclosure of these documents has already taken place, and an injunction will not remedy the harm. The Limited Partner Action was filed early on December 15, 2014 and was not sealed until late the following day. Thus, these purportedly confidential documents were in the public record for almost two full days, and this injunction, brought two weeks after the disclosure of these documents, is too late.

*Second*, to the extent Frydman seeks to prevent the future disclosure of the "confidential documents" in the Limited Partner Action, the limited partners already agreed to redact

16

references to the ███████████ and the financial statements from the Limited Partner Action. *See* Kadosh Aff., Ex. 5.

    *Third*, beyond their use in Limited Partner Action, Frydman has not demonstrated that the Verschleiser Parties intend to use the United Realty documents. He instead speculates that Verschleiser will use "the Stolen Trade Secrets in other devious and criminal ways which Verschleiser, undoubtedly will dream up."  *See* Frydman Mem. of Law at 6. This garbled conjecture is insufficient to demonstrate irreparable harm. To the contrary, in the Second Circuit the misappropriation of information alone is insufficient to create a presumption of irreparable harm. *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118-19 (2d Cir. 2009). "To demonstrate irreparable harm, a plaintiff must show an imminent danger that a defendant is likely to disseminate the protected information-an eventuality that should not be presumed given that the 'misappropriator will often have the same incentive as the originator to maintain the confidentiality of the secret in order to profit from the proprietary knowledge.'" *Synergy Advanced Pharm., Inc. v. CapeBio, LLC*, No. 10 CIV. 1736(SAS), 2010 WL 2194809, at *5 (S.D.N.Y. June 1, 2010) (quoting *Faiveley*, 599 F.3d at 119).[9]  Frydman has not demonstrated any "imminent danger" that United Realty's "trade secrets" will be disseminated.

    **B.  The Injunction Seeking to Suppress Evidence of Frydman's Misconduct Should Be Denied Because the Documents Are Not Protectable Trade Secrets**

    Frydman's TRO should also be denied because the documents at issue are not protectable trade secrets. First, there has been no showing that these documents are in fact trade secrets.

---

[9] The cases cited by Frydman arguing that irreparable harm is presumed where trade secrets are misappropriated, *see* Mem. of Law at 17-19, all predate the Second Circuit's decision *Faiveley,* which expressly rejects this presumption. *Faiveley*, 599 F.3d at 118 ("Some courts in this Circuit [hold] that a presumption of irreparable harm automatically arises upon the determination that a trade secret has been misappropriated. . . . That reading is not correct.")

Among other things, Ackerman, who is a limited partner of United Realty, had access to these documents as part of his responsibilities as Chief Compliance Officer of the broker-dealer.

He used these documents to assist in the initiation of the Limited Partner Action, which exposed and seeks to prevent fraud and corporate waste by Frydman. Courts strongly discourage enforcing confidentiality provisions or non-disclosure agreements against whistleblowers like Ackerman, who are not using the "confidential" information for private gain, but to prevent fraud and abuse. *Cf. United States v. Cancer Treatment Ctrs. of Am.*, 350 F. Supp. 2d 765, 773 (N.D. Ill. 2004)(employee could not be held liable for breaching contract by disclosing confidential documents that allegedly showed employer engaging in fraudulent acts); *Brado v. Vocera Commc'ns, Inc.*, 14 F. Supp. 3d  1316, 1320 (N.D. Cal. 2014) (confidentiality agreement between corporation and its former employee did not bar investors from using confidential information obtained from employee; public policy encouraged disclosure of fraudulent conduct.)

**VI.     Frydman's Request to Amend His Complaint and Add Parties Should Be Denied; The Court Should Instead *Sua Sponte* Dismiss this Action Because It Is Duplicative of His Other Federal and State Court Actions**

Frydman's request to amend his complaint and add additional plaintiffs and defendants should be denied. To the contrary, the Court should exercise its inherent powers to *sua sponte* dismiss this action, because it is the fifth frivolous lawsuit that Frydman filed against Verschleiser in 2014, and because it impermissibly splits the claim with the other Frydman action before this Court, *United Realty v. Verschleiser.*

It is well-settled that a plaintiff has "no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendant." *DiGennaro v. Whitehair*, 467 F. App'x 42, 43 (2d Cir. 2012); *Adams v. Cal. Dep't of Health Servs.*, 487 F.3d 684, 688 (9th Cir. 2007). On this basis, courts regularly dismiss duplicative

actions arising out of the same nucleus of facts where the court finds that the second suit raises issues that should have been bought in the first suit. *Adams*, 487 F.3d at 689. This is true even if the second suit asserts new federal and state statutory claims. *Id.* That is the case here.

Frydman filed *United Realty* on July 30, 2014 alleging that Verschleiser violated a panoply of state and federal statutes by hacking into his email and making disparaging statements. At a pre-motion conference on October 7, 2014, the Court gave Frydman permission to amend his complaint to correct any pleading deficiencies. *See* Order, *United Realty* , 14-cv-5903, ECF No. 17. The same night, Frydman filed two new actions, one in state court and the present action in federal court.[10] A week later, he also filed an amended complaint in *United Realty.*

In this action, like in *United Realty*, Frydman alleges that Verschleiser "accessed and hijacked United Realty's hosted email exchange server, . . . hack[ed] into and intercept[ed] the emails of United Realty employees, create[d] backups of United Realty email data and trade secrets." *Compare United Realty* Compl. ¶ 31 *with Frydman v. Verschleiser* Compl. ¶ 29. Both complaints similarly allege that Verschleiser engaged in an internet-based disparagement campaign against Frydman and identify the same exact "disparaging" statements that Verschleiser purportedly made. *Compare United Realty* Compl. ¶¶ 123-130, 143, 148-157 *with Frydman v. Verschleiser* Compl. ¶ 44-46; 83. Both complaints also allege that Verschleiser misappropriated Frydman's name and likeness to defraud the public. *United Realty* Compl. ¶ 152 *with Frydman v. Verschleiser* Compl. ¶ 89.

Indeed, vast sections of the two complaints are identical. *Compare United Realty* Compl. ¶¶ 89-98 *with Frydman v. Verschleiser* Compl. ¶¶ 56-64; ¶¶ 153-182 *with* ¶¶ 95-124; ¶¶ 183-199 *with* ¶¶ 129-145. Frydman simply copied and pasted from the *United Realty* complaint,

---

[10] The second action is *Frydman v. Rosen. See* Kadosh Aff., Ex. 1.

slapped on some RICO allegations, and packaged it as a "new action."  A copy of a chart comparing the identical paragraphs in both complaints is attached as Exhibit 9 to the Kadosh Affirmation. Frydman's conduct is particularly galling because he filed this action a few hours after this Court granted him leave to amend *United Realty* and he could have included any new "allegations" there.

Because Frydman previously initiated an action in this Court (and one in state court) alleging that Verschleiser hacked and disparaged Frydman, Frydman may not maintain a separate, parallel suit alleging that Verschelsier is engaged in a conspiracy to "encourage" the same. *See Davis v. Norwalk Econ. Opportunity Now, Inc.*, 534 F. App'x 47, 48 (2d Cir. 2013) (dismissing lawsuit alleging that defendant improperly retaliated against employee asserting False Claims Act claims as duplicative of retaliation claim in Title VII complaint; "No different conclusion is warranted because the complaints allege . . . distinct legal theories . . ."); *DiGennaro*, 467 F. App'x at 44 (affirming dismissal of claim under doctrine of claim-splitting; the second case "involves findings on the exact same facts" required to resolve the claims in the first action.)

Given the duplicative and frivolous nature of this action, the Court should exercise its inherent power to dismiss this action *sua sponte.* In *Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000), the Second Circuit affirmed the *sua sponte* dismissal of a RICO claim brought by a *pro se* plaintiff that was duplicative of two prior lawsuits plaintiff previously filed. In *Houston v. Manheim-New York*, 475 F. App'x 776, 780 (2d Cir. 2012), the Second Circuit affirmed a *sua sponte* dismissal where the *pro se* plaintiff's claims "lacked an arguable basis in law or fact."  Frydman's Complaint is duplicative of his prior frivolous actions, and should be dismissed *sua sponte.*

### VII.    The TRO Papers Should Not Be Sealed

Frydman's transparent attempt to conceal his most recent litigation from public scrutiny by sealing all documents in this case should be rejected. Judicial documents bear "a presumption of immediate public access" under the First Amendment and common law. *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 126 (2d Cir. 2006). This presumption is overcome only "if specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Id.* Courts in this District have held that "the mere existence of a confidentiality agreement covering judicial documents is insufficient to overcome the First Amendment presumption of access." *Aioi Nissay Dowa Ins. Co. v. ProSight Specialty Mgmt. Co.*, No. 12 CIV. 3274 JPO, 2012 WL 3583176, at *6 (S.D.N.Y. Aug. 21, 2012). Here, Frydman's attempt to seal all documents in this action, purportedly to avoid disclosing ████████ —which was already made public in the two days prior to the sealing of the Limited Partner Action—can hardly be deemed "essential" or "narrowly tailored" and his motion to seal this docket should be denied. *See id.* (denying motion to seal even though the documents respondents sought to seal were the subject of a confidentiality order); *Alexandria Real Estate Equities, Inc. v. Fair*, No. 11 CIV. 3694 LTS, 2011 WL 6015646, at *3 (S.D.N.Y. Nov. 30, 2011) (same).

### CONCLUSION

For the above  reasons, Defendants respectfully ask the Court to deny Frydman's TRO, dismiss this action *sua sponte* with prejudice, decline to enter an order sealing this docket, and order any such further relief as the Court may deem just and proper.

Dated:          January 2, 2015
                New York, New York

                                    Respectfully submitted,

                                    **REED SMITH LLP**


                                    By: _/s/ Steven Cooper_ _____

                                    Steven Cooper
                                    Samuel Kadosh
                                    599 Lexington Avenue
                                    New York, New York 10022
                                    Telephone: (212) 521-5400
                                    Facsimile: (212) 521-5450

                                    _Attorneys for Defendants_

22