

# VISHNICK McGOVERN MILIZIO LLP
## ATTORNEYS AT LAW

April 3, 2015

Avrohom Gefen
Associate
t. 516.437.4385 x119
AGefen@vmmlegal.com

*Via ECF*
Judge John G. Koeltl
United States Courthouse
500 Pearl Street
New York, New York 10007

  Re: *Frydman v. Verschleiser*
     *Southern District of NY Case No. 14 Civ. 8084 (JGK)(JLC)*

### Defendant Albert Akerman's Request for a Pre-Motion Conference

  This firm represents Defendant Albert Akerman, who was served this week with the Supplemental Summons and Amended Complaint in the above-referenced matter. I write to request a pre-motion conference pursuant to the Court's Individual Practices, Rule 2(A). The Amended Complaint should be dismissed as against Akerman pursuant to Fed. R. Civ. P. 12(b)(6) because the Plaintiffs released Akerman from all of the claims asserted in the Amended Complaint on February 20, 2015. Despite the release- and after Akerman provided the Plaintiffs with the requested consideration- Plaintiffs renounced the release and filed and served the Amended Complaint naming Akerman as a defendant, asserting claims against him which allegedly accrued prior to the date of the release.

## BACKGROUND

  By way of background, Defendant Albert Akerman is the former Chief Compliance Officer of Cabot Lodge Securities LLC ("CLS"), a registered broker-dealer now controlled by Plaintiff Jacob Frydman. Prior to the filing of the Amended Complaint, Akerman and Frydman asserted various

3000 Marcus Avenue, Suite 1E9 • Lake Success, NY 11042 • t. 516.437.4385 • f. 516.437.4395
830 Third Avenue, 5th Floor, New York, NY 10022 • t. 212.759.3500
www.vmmlegal.com • Please direct all correspondence and documents to the Lake Success office.

# VISHNICK MCGOVERN MILIZIO LLP
## ATTORNEYS AT LAW

April 3, 2015
Page 2

claims against each other in this case as well as in New York State Supreme Court.  Specifically,
Akerman filed a lawsuit against Frydman in Supreme Court asserting various claims including
breach of contract and breach of fiduciary duty ("the State Court Lawsuit") and sent a letter
containing certain allegations related to management of CLS to the SEC and other parties ("the SEC
Letter"). In turn, Frydman sought to hold Akerman in contempt for allegedly violating this Court's
TRO and threatened to add Akerman as a defendant in this action and to file additional actions
against him. CLS and its subsidiary CL Wealth Management also filed a Form U5 containing
negative comments about Akerman ("the U5") with FINRA after Akerman was terminated from
Cabot Lodge on or around December 15, 2014.

## THE SETTLEMENT AND RELEASE

After Akerman filed the State Court Lawsuit and sent the SEC Letter, Frydman and his
counsel contacted Akerman's counsel on or around February 18, 2015 in an attempt to have
Akerman discontinue the State Court Lawsuit and retract the SEC Letter. Extensive and intense
negotiations between counsel for the parties, which included the active participation of both Frydman
and Akerman, continued into the evening of February 19, 2015 and through February 20, 2015.
Frydman and his counsel insisted that an agreement had to be finalized and that Akerman had to take
certain affirmative steps by the afternoon of February 20th if there was going to be a settlement.

The parties entered into an agreement on February 20, 2015 ("the Agreement") which, inter
alia, required Akerman to discontinue the State Court Lawsuit with prejudice and send a retraction



# VISHNICK McGOVERN MILIZIO LLP
## ATTORNEYS AT LAW

April 3, 2015
Page 3

of the SEC Letter, with specific language demanded by Frydman, to the SEC with copies to

numerous other parties and media outlets. Akerman also agreed to release Frydman from all claims

against him and his affiliates, including CLS, with a limited "carve out" for a specific claim

unrelated to this matter. In return, Frydman agreed to broadly release Akerman from any claims

against him up to the date of the Agreement, also with a limited "carve out" for specific claims not

related to this matter.[1] Frydman further agreed that he would not seek contempt against Akerman

and that CLS and its affiliates would not contest Akerman's FINRA arbitration application to

expunge the negative U5, so long as the arbitration action did not seek "affirmative relief". The

---

[1] The specific language of the release is as follows:
"Simultaneously with the execution of this Agreement, but subject to Akerman's faithful
performance of his obligations and agreements made in paragraphs 1, 2 and 3 hereof, except only
with respect to (i) a Promissory Note in the original principal sum of $50,000 payable by
Akerman to Winter Investors, LLC and advances owed by Akerman to CLS (less any sums paid
by Akerman); (ii) advances owed by Akerman to CLS (less any sums paid by Akerman); and (iii)
prosecution of their defense of any claims or suit which may be asserted or brought by Akerman
pursuant to paragraph 3 hereof (each of the foregoing being expressly excluded for the following
release), United, CLS, United Realty Trust Incorporated, Frydman and each of their respective
Affiliates (the "United Releasing Persons"), hereby release any and all claims, suits,
controversies, actions, causes of action, cross-claims, counter-claims, demands, debts,
compensatory damages, liquidated damages, punitive or exemplary damages, other damages,
claims for costs and attorneys' fees, or liabilities of any nature whatsoever in law and in equity,
both past and present, whether known or unknown, suspected, or claimed against Akerman and
each and every one of his Affiliates, and each of their respective successors or assigns, which the
United Releasing Persons ever had, now have, or hereafter may have, by reason of any matter,
cause, or thing whatsoever, from the beginning of the world through the time of execution of this
Agreement. This release will survive the transactions contemplated herein. In the event that
Akerman breaches the provisions of paragraphs 1,2 or 3 hereof, the release provided in this
paragraph 4 shall be null and void ab initio."



VISHNICK McGOVERN MILIZIO LLP
**ATTORNEYS AT LAW**

April 3, 2015
Page 4

parties also agreed that they would not disparage one another.[2]

The Agreement required Akerman to discontinue his State Court Lawsuit and to send the SEC retraction letter to all of the parties and media outlets specified by Frydman by the afternoon of February 20, 2015, the same day the agreement was executed. Akerman scrupulously complied with these requirements by discontinuing the State Court Lawsuit with prejudice and sending a retraction letter, as dictated by Frydman, on February 20, 2015.  On or around February 25, 2015 Akerman filed his arbitration submission with FINRA, seeking expungement of his negative U5. The arbitration submission did not request any affirmative relief against CLS or CL Wealth Management.[3]

Nevertheless, on March 4, 2015, days after Frydman released Akerman, and after Akerman provided all the consideration requested by Frydman, Frydman sent a letter to Akerman claiming that Akerman violated the Agreement and that Frydman was therefore not bound by the terms of the Agreement.[4] In that regard, the Agreement allowed Akerman to file for arbitration with FINRA to seek expungement of the unfavorable Form U5 filed by CLS so long as the arbitration action did not

_____

[2]Due to the sensitive nature of this matter, a copy of the Agreement can be provided to the Court for an *in camera* review.

[3] A copy of Akerman's FINRA submission is available for *in camera* review.

[4] Notwithstanding Frydman's claims on March 4, 2015 that he was not bound by the Agreement, on March 6, 2015 Frydman executed a Stipulation confirming that he would not seek contempt against Akerman, as provided in the Agreement. The Stipulation was "so ordered" by the Court on March 6, 2015.



VISHNICK McGOVERN MILIZIO LLP
**ATTORNEYS AT LAW**

April 3, 2015
Page 5

seek "affirmative relief". Akerman filed for FINRA arbitration and in his confidential Statement of

Claim asserted that the negative statements made by CLS and CL Wealth Management in the U5

were untrue. Akerman requested that FINRA find that the negative remarks were untrue and expunge

the negative remarks from the U5 by changing the "reason for termination" to "voluntary" and

changing the answers to certain questions from "yes" to "no".[5]  Frydman claimed in his March 4,

2015 letter that Akerman had violated a condition of the release by: 1. disparaging CLS and/or its

affiliates by asserting in his FINRA submission that the statements made by CLS and CL Wealth

Management were untrue[6]; 2. seeking expungement related to the filing by CL Wealth Management

(because the Agreement provided that Akerman could seek expungement of the U5 filed by CLS);

and 3. requesting "affirmative relief" from FINRA because the submission requested that FINRA

find that the statements made by CLS were untrue and requested that FINRA change the reason for

---

[5] On the Form U5, if the "reason for termination" is listed as anything other than "voluntary" and if Questions 7(b), 7(f)(1) and 7(f)2 are answered "yes", then explanations from the employer are required., Therefore, in order for a negative U5 to be expunged, the "reason for termination" must be changed to voluntary and the answers to Questions 7(b), 7(f)(1) and 7(f)2 must be changed to "no". FINRA has the power to make these changes without any action on the part of the employer.  A copy of Akerman's FINRA submission can be provided to the Court for *in camera* review.

[6] Ironically, on February 21, 2015, before Akerman filed anything with FINRA, Frydman himself disparaged Akerman in an email sent to at least 6 individuals in which he stated that: "Akerman has lost his job, has lost his license, has lost his livelihood, has lost his investment in United Realty Advisors, and has lost ALL CREDIBITITY (sic). HE IS A LAUGHING STOCK (sic). . .a man with NO MORALs(sic), NO ETHICS, NO CREDABILITY (sic)..." A copy of the email is available for the Court's *in camera review.*

# Vishnick McGovern Milizio llp
## ATTORNEYS AT LAW

April 3, 2015
Page 6

termination and the answer to certain questions.

In an attempt to resolve the matter, on March 6, 2015, Akerman's counsel sent a letter to Lewis Fischbein, counsel for the Plaintiffs other than Frydman, explaining that: 1. Akerman had not violated the Agreement and had not disparaged CLS because the Agreement specifically provided that Akerman could seek expungement; 2. CL Wealth Management had to be named in the FINRA submission because a single U5 was filed but both CLS and CL Wealth Management were listed as "filers"and that certainly was covered by the Agreement; and 3. Akerman was not seeking "affirmative relief" but rather expungement (as permitted by the Agreement) and that it was necessary to both request that FINRA find the U5 statements untrue and request that FINRA change the reason for termination and the answers for certain questions from "yes" to "no".  The letter also noted that FINRA arbitration submissions are confidential and can only be accessed by the parties and FINRA.

In a letter dated March 9, 2015, Frydman responded to the Akerman's counsel's letter and reiterated his position that the release in the Agreement was not binding despite the fact that Akerman had already provided the consideration requested by Frydman.[7] Upon receipt of this letter, Akerman's counsel contacted Lewis Fischbein to informally explore if there was a way to resolve any misunderstanding, but Frydman was unwilling to consider any resolution.

On or around March 13, 2015 Frydman amended the complaint in this matter to name

---

[7]Copies of the three letters are available for the Court's *in camera* review.



## VISHNICK McGOVERN MILIZIO LLP
### ATTORNEYS AT LAW

April 3, 2015
Page 7

Akerman and to assert claims against him. All of the claims against Akerman in the Amended Complaint accrued prior to February 20, 2015, the date of the release. Although the Agreement provided that CLS would not oppose Akerman's FINRA application for expungement, on or around March 18, 2015, Frydman submitted a 59-page answer to Akerman's FINRA submission on behalf of CLS and CL Wealth Management which includes a counterclaim for "not less than $8 million".[8]

"It is well-established that a Settlement Agreement containing a valid release forecloses a party's ability to litigate claims subject to that release" *Spanski Enters. v. Telewizja*, 2013 U.S. Dist. LEXIS 2853 (S.D.N.Y. 2013),*Affd. by Spanski Enters. v. Telewizja Polska, S.A.*, 581 Fed. Appx. 72 (2d Cir. 2014). Defendant Akerman will move for an order dismissing the complaint against him pursuant to Fed. R. Civ. P. 12(b)(6) because the claims against him in the Amended Complaint are barred by the release and therefore fail to state a cause of action against him. *See   Matusovsky v. Merrill Lynch*, 186 F. Supp. 2d 397 (S.D.N.Y. 2002) (finding that a valid release can be the basis of a Rule 12(b)(6) motion).[9]

---

[8] A copy of Frydman's answer on behalf of CLS and CL Wealth Manangement is available for *in camera* review.

[9] *See also Birdsong v. AT&T Corp.*, 2013 U.S. Dist. LEXIS 37272 (N.D. Cal. Mar. 18, 2013)("In general, a court may not consider evidence extrinsic to the pleadings when deciding a motion to dismiss. See Fed. R. Civ. P. 12(d). However, under the doctrine of incorporation by reference, courts may consider extrinsic documents if they are "integral" to the plaintiff's claims and their authenticity is not in dispute. A plaintiff's failure to refer to such documents "rais[es] the spectre that plaintiff failed to incorporate them by reference in the complaint as a means of avoiding Rule 12(b)(6) dismissal.")(internal citations omitted). Alternatively, if the Court finds the Agreement too extrinsic to the Amended Complaint to consider in a Rule 12(b)(6) motion,



VISHNICK MCGOVERN MILIZIO LLP
**ATTORNEYS AT LAW**

April 3, 2015
Page 8

     Accordingly, Defendant Akerman respectfully requests that the Court schedule a pre-motion conference pursuant to the Court's Individual Practices on a mutually agreeable date after April 14, 2015.[10]

Respectfully submitted,

Avrohom Gefen

cc(via ECF):   Jacob Frydman
                Lewis S. Fischbein, Esq.

---

the Court may convert the motion to a Rule 56 motion for summary judgment. *See Roth v. Jennings,* 489 F.3d 499, 509 (2d Cir. 2007) ("If, on such a [Rule 12 (b)(6)] motion, "matters outside the pleading are presented to and not excluded by the court," the court should normally treat the motion as one for summary judgment pursuant to Fed. R. Civ. P. 56.").

   [10] I will be unavailable to appear in court from April 3, 2015 until April 13, 2014 due to the Passover holiday and Plaintiff Frydman is scheduled to depose Defendant Akerman in a different state court case on April 14, 2015.