UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
JACOB FRYDMAN, UNITED REALTY ADVISORS,
LP, AND PRIME UNITED HOLDINGS LLC

Case No. 14 CV 8084 (JGK)

Plaintiffs,

- against -                                    (Related Case No. 14 CV 5093)

ELI VERSCHLEISER, ALBERT AKERMAN, DAVID O.
WRIGHT, ASHER GULKO, THE FISHOFF FAMILY
FOUNDATION, BENJAMIN FISHOFF, STEVEN
VEGH, JAFFA HOLDINGS, LLC, ELAN JAFFA,
WHITEGATE FUNDING, LLC, PIUNCUS RAND, MARK
APPEL, MULTI CAPITAL GROUP OF COMPANIES,
LLC, ERIC FISCHGRUND, RAUL DELFORNO, OPHIR
PINHASI, JOSEPH SPIEZIO, INTERMEDIA.NET, INC,
ALEX ONICA, FRANK CHANDLER, CAESARS
ENTERTAINMENT CORPORATION, and DOES 1
THROUGH 15 inclusive,

Defendants.

-------------------------------------------------------------------X

---

*Memorandum of Law in Support*
*of David Wright Motion to Dismiss*

---

DAVID O. WRIGHT, ESQ.

*David O. Wright*
_____
By: David O. Wright DW6856
1012 Park Street
Peekskill NY 10566
(914) 245-0455
Defendant Pro Se

Table of Contents

Memorandum of Law

| Content | Page |
|---|---|
| Preliminary Statement and Summary of Argument ........................................ | 1 |
| The Court cannot – and should not – ignore Frydman's history of making baseless accusations and lying to the Court ......................................................... | 5 |
| The Complaint is not plausible ............................................................ | 8 |
| ARGUMENT | |
| I. Frydman fails properly to plead a RICO scheme, pattern or enterprise ............................................................... | 9 |
| There is nothing in the plausible facts to suggest that Wright joined an alleged enterprise-in-fact ............................ | 9 |
| i. Wright represented APF defending a frivolous Frydman lawsuit, got it dismissed and was awarded some $39,000 in attorneys fees against Frydman, which Frydman would not -- or could not -- pay ......................................................... | 10 |
| ii. Wright gave an interview to the New York Post, unflattering to Frydman ........................................................ | 10 |
| iii. Wright allegedly 'induced' Al Akerman to steal confidential information from United Realty? .......................................... | 11 |
| – The allegation is implausible | |
| – The allegation is contradicted by JF allegation that EV induced AA to steal it. | |
| It must be shown that the defendant's conduct was the factual and proximate cause of the plaintiff's injury to its business or property .............................................. | 13 |
| iv. Wright did not file a baseless lawsuit and had real clients ... | 14 |
| v. The Complaint does not meet the legal standard for pleading enterprise-in-fact ....................................................... | 16 |
| vi. The pattern is closed-end, and not of sufficient continuity .. | 17 |
| II. The Complaint fails properly to plead predicate acts under Rule 9(b), plausibility, and applicable wire fraud statute ........... | 19 |
| A. The predicate acts are not properly pleaded or are implausible ...... | 19 |
| B. The state court LP action was not baseless, nor was its filing actionable ................................................................. | 20 |
| i. The suit was factually detailed and well documented .......... | 20 |
| ii. Frydman has now asked the state court to find the lawsuit was baseless; this Court ought to defer ....................... | 24 |
| iii. Legal standard: absolute privilege ...................................... | 24 |
| C. There is nothing in the New York Post article that is actionable .... | 27 |
| D. Use of confidential information ......................................................... | 27 |
| E. Perjurious verification of LP complaint ............................................ | 27 |

      F. Failure to plead "intent to profit" means DW

      could not be guilty of wire fraud .......................................................... 38

III.    There is no RICO Injury and Frydman individually

      lacks any standing ............................................................... 29

          Frydman personally has no right to assert his personal

          humiliation, damage to his reputation, as RICO Injury ....... 30

          No personal damages ............................................................ 30

IV.    The state court counts are meritless, and

      should not be entertained ................................................ 32

V.    Documentary evidence may be submitted

      in support of the motion to dismiss ................................................. 33

Conclusion ................................................................................. 35

*Table of Authorities*

*Cases*                                                                   Page

Aramony v. United Way, 969 F. Supp. 226, 232 (S.D.N.Y. 1997) ...........           31

Ashcroft v. Iqbal, 556 U.S. 662 (2009) .......................................           8

At the Airport v. ISATA, Inc., 438 F. Supp.55, 62 (E.D.N.Y. 2006) .......           30

Brass v. American Film Technologies, Inc., 987 F.2d 142,
150 (2d Cir.1993) ...................................................................           34

Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2002) ...................           34

Cortec Industries, Inc. v.  Sum Holding, L.P., 949 F.2d 42,
47 (1991) ..............................................................................           33

Cudemo v. Al and Lou, 54 A.D.2d 995,
387 N.Y.S.2d 929 (3d Dept. 1976) ..........................................           22 fn.

Darby Trading, Inc. v. Shell Intl. Trading, 568 F. Supp.2d 329,
342 (S.D.N.Y. 2008) ...............................................................           33

First Capital Asset Management, Inc. v. Lievense, 385 F.3d
159 (2d Cir. 2004) .................................................................           17, 18

Hollander v. Flash Dancers, 340 F. Supp. 2d 453, 458
(S.D.N.Y. 2004) ...................................................................           30

In re Lyondell Chemical Co., 491 B.R. 41, 50 (S.D.N.Y. 2013) ..............           34

International Audiotext Network, Inc. v. American Telephone
& Telegraph Co., 62 F.3d 69, 72 (2d Cir.1995) .........................           34

Katzman v. Victoria's Secret Catalogue, 167 F.R.D. 649,
655 (S.D.N.Y. 1996) ................................................................           2, 28

Long v. Marubeni America Corp., 406 F. Supp. 2d 285,
294 (S.D.N.Y. 2005) ...............................................................           25

Manson v. Stacescu, 11 F.3d 1127, 1131 (2d Cir. 1993) ..........................           30

Metromedia Co. v. Fugazy, 983 F.2d 350, 369 (2d Cir.1992) .................. 18

Reich v. Lopez, 38 F. Supp. 3d 436, 450 (S.D.N.Y. 2014) ...................... 28, 30

Sandals Resorts Int'l, Ltd. v. Google, Inc., 86 A.D.3d 32,
925 N.Y.S.2d 407 (1st Dept. 2011) ............................................................ 26 fn.

Triestman v. Federal Bureau of Prisons, 470 F.3d 471,
475 (2d Cir. 2006) ...................................................................................... 2

Wiener v. Weintraub, 22 N.Y.2d 330, 332, 292 N.Y.S.2d 667,
669 (1968) ................................................................................................... 25 fn.

Williams v. Williams 23 N.Y.2d 592, 298 N.Y.S.2d 473
(1969) .......................................................................................................... 25

## Statutes and Rules

Federal Rule Civ. P. 9(b) ............................................................................ 8

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
JACOB FRYDMAN, UNITED REALTY ADVISORS,
LP, AND PRIME UNITED HOLDINGS LLC

                                                    Case No. 14 CV 8084 (JGK)

                                        Plaintiffs,

        - against -                                 (Related Case No. 14 CV 5093)

ELI VERSCHLEISER, ALBERT AKERMAN, DAVID O.
WRIGHT, ASHER GULKO, THE FISHOFF FAMILY
FOUNDATION, BENJAMIN FISHOFF, STEVEN
VEGH, JAFFA HOLDINGS, LLC, ELAN JAFFA,
WHITEGATE FUNDING, LLC, PIUNCUS RAND, MARK
APPEL, MULTI CAPITAL GROUP OF COMPANIES,
LLC, ERIC FISCHGRUND, RAUL DELFORNO, OPHIR
PINHASI, JOSEPH SPIEZIO, INTERMEDIA.NET, INC,
ALEX ONICA, FRANK CHANDLER, CAESARS
ENTERTAINMENT CORPORATION, and DOES 1
THROUGH 15 inclusive,

                                        Defendants.
--------------------------------------------------------------------X

Preliminary Statement

        Defendant David O. Wright submits this memorandum in support of motion to

dismiss the second amended complaint.  Also submitted in support of the motion is the

affirmation of David O. Wright, with exhibits.[1]  This defendant also incorporates by reference the

arguments for dismissal being made by co-defendants.

Summary of Argument

        The pro se plaintiff,[2] a serial litigator[3] trained in the law but having given up his

_____

        [1]  The Court may take judicial notice of documents on a motion to dismiss.    See

discussion Point V.

        [2]  Attorney Fischbein has refused to sign on to most of the RICO claims against David

law license,[4] sues David Wright ("DW") for conspiring with Mr. Verschleiser ("EV") and friends

for the purpose of (1) damaging Frydman's ("JF")reputation by allegedly filing and

disseminating a baseless state court lawsuit, (2) inducing Mr. Akerman ("AA") to steal

confidential information and (3) intentionally interfering with the sale transaction.

      The Court should give special scrutiny to this R.I.C.O. complaint.  In <u>Katzman</u> v.

<u>Victoria's Secret Catalogue</u>, 167 F.R.D. 649, 655 (S.D.N.Y. 1996), Judge Sweet wrote:

> "Civil RICO is an unusually potent weapon—the litigation equivalent of a thermonuclear device." Miranda v. Ponce Fed. Bank, 948 F.2d 41, 44 (1st Cir.1991). Because the "mere assertion of a RICO claim ... has an almost inevitable stigmatizing effect on those named as defendants, ... courts should strive to flush out frivolous RICO allegations at an early stage of the litigation."

> Frydman's penmanship should not be given the liberality reserved for most pro se

litigants, because that liberality is accorded due to the usual pro se litigant's "lack of legal

training."  <u>Triestman</u> v. <u>Federal Bureau of Prisons</u>, 470 F.3d 471, 475 (2d Cir. 2006).  Here,

---

Wright, leaving those claims to be asserted only by Jacob Frydman personally.  See Complaint

Para. 298 and 307 – Counts I and II only Frydman, not the corporate entities, suing DW.  The

only Counts on which the entities (as opposed to Frydman personally) are suing DW are state law

Libel Per Se (Count VIII); Trade Libel (Count IX); Misappropriation of Trade Secrets only JF is

suing DW (Count XI); and Tortious Interference with Contractual or Business Relations (Count

XII).

    [3]  See Wright Affirmation Exhibit L, list of Frydman litigations.

    [4]  See Wright Exhibit XX, REIT Prospectus p. 84 "Background."

Frydman (a) went to law school,[5] (b) in fact, practiced law for a number of years,[6] and ( c ) has authored over 100 lawsuits in state and federal courts.[7]

The central claims are based on the R.I.C.O. statute.  The prolix complaint alleges an enterprise-in-fact, which Frydman fancifully calls "the Ring."  However, the alleged RICO scheme is a garbled mess, the gist of which is that defendants wanted to harm Jacob Frydman and /or his companies.  Centrally, Jacob's alleged "reputation."  Plaintiff has taken a host of unrelated acts, and styles them as a "pattern" and "enterprise," a grand conspiracy by all the Enemies of Frydman.[8]  Despite its length and the host of real or perceived wrongs, this does not constitute a RICO scheme, pattern or enterprise.  (Point I below)

The repeated incantations of "fraud," "perjury," "conspiracy" and the like, should be dismissed under Rule 9(b).  There is nothing to support them, nor are they plausible.  In most cases, the allegations of the Complaint are directly inconsistent with the documents referred to in the Complaint and otherwise matters of public record.  The state court LP action was not baseless; the clients were well involved; there is an absolute privilege barring Frydman's claims,

---

[5]  See REIT Prospectus p. 84.  Case Western Reserve Law School.

[6]  See REIT Prospectus p. 84.

[7]  We believe that co-defendants have developed a more extensive list.

[8]  Thus, Frydman devotes pages 16 - 57 of the Complaint to disparaging Verschleiser, 'exposing' Verschleiser's alleged criminal background, even pointing out that "Multigroup" is a name also used by the Bulgarian Mafia.  This has nothing to do with DW, and there is not even an allegation that DW knew anything about Verschleiser before getting involved with Eli and the other United Realty LPs.  But that is the business partner chosen by JF.

and in any event, this Court should not act because Frydman has now asked the state court judge to determine the same issue, i.e. whether the action was baseless.  As to wire fraud, the Complaint fails even to allege the elements, let alone satisfy Rule 9(b) and plausibility.  (Point II below).

Frydman also fails to demonstrate how he has any standing to assert claims for damages to the various entities, nor does he plead how damage to his reputation constitutes RICO injury.  But he needs also to plead how he thinks he has any reputation, given the wealth of public records to the contrary[9] – by his own pen, he has sworn many times that his reputation has been destroyed by others.  (Point III below)

The state law claims as against DW[10] also fail to state any cause of action and should either be dismissed, certainly the Court should not entertain them.  (Point IV below).

---

[9]  With over 100 litigations before this one, most claiming damage to his reputation, Frydman should be required to plead some explanation for the latest wrongs and perceived wrongs, somehow damage him personally.  For example, in November 2014, he sued each of the major credit bureaus for a total of $75 million, alleging inter alia that he was denied millions in loans.  Wright Aff. Exhibit WW (consolidated).  In the PAF litigation, his attorney informed the Court that the Enemies of Frydman in *that* case had "pretty successfully" "destroy[ed] Mr. Frydman's business and his reputation."  Wright Aff. Ex. HH 6/10/14 transcript page 21; Ex. II PAF Affidavit - JF cites over 114 defamatory posts.

[10]  Plaintiffs sue DW under state law for Libel Per Se (Count VIII); Trade Libel (Count IX); Misappropriation of Trade Secrets only JF is suing DW (Count XI); and Tortious Interference with Contractual or Business Relations (Count XII).

Submitted herewith are extensive documentary exhibits, which the Court should consider on this motion to dismiss, because the documents are directly referenced in the Complaint or are matters otherwise judicially noticeable.  (Point IV below).

### The Court cannot – and should not – ignore Frydman's history of making baseless accusations and lying to the Court

Preliminarily, the Court should, in assessing the plausibility of Frydman's latest pleading, take note of his history of making demonstrably false statements in Court papers. Although Frydman has amended the complaint again – indeed, given it almost a complete overhaul – to remove some of the baseless accusations contained in the previous draft, the wild accusations should be considered by the Court in assessing whether some of the current accusations meet the plausibility test.  Throughout the past – and the present pleading – Frydman makes a host of statements that are demonstrably false.  The Court should take this into consideration in assessing the plausibility of the remaining allegations.

For example, in the First Amended Complaint, Frydman alleged that DW and/or one of the other defendants had posted a Ripoff Report dated June 5, 2014.[11]  (Prior complaint Para. 212, 215-218).  As can be seen, the Ripoff Report stated that it was posted by "Al in Wallkill."  (Wright Aff. Exhibit FF, libel complaint against Alex Francese-Ex.A).  The Ripoff Report accuses Frydman of lying under oath in an arbitration – the arbitration and subsequent litigation in which DW represented Al Francese and his company APF Fire Protection (both of Wallkill NY).  Even Frydman could figure out that Al Francese posted it.  Yet he signed a federal

---

[11]  A copy of the prior Frydman complaint is submitted as Wright Aff. Exhibit H.

complaint,[12] telling Judge Koetl that it was posted by DW.  (JF Declaration 12/29/14 at Para. 29, Wright Aff. Ex. J).  In fact, Frydman sued Mr. Francese for posting the Ripoff Report, only a matter of months after Frydman had sworn in federal court that DW posted it.  Having no choice, Frydman has wisely not included those allegations in the latest Second Amended Complaint.

JF also repeatedly lied to the Court on January 5, 2015, when Judge Koetl asked about JF's serial litigation activity:

| | |
|---|---|
| THE COURT: | What is the explanation for the list of the 90 lawsuits? [DW had attached it to letter dated 1-4-15 to the Court] |
| MR. FRYDMAN: | Well, I have seen that list for the first time when Mr. Wright handed me his letter. |
| THE COURT: | That was attached to the papers in opposition to the TRO. |
| MR. FRYDMAN: | I believe it is the same list, your Honor. |
| THE COURT: | So you had seen it. |
| MR. FRYDMAN: | What this list is -- |
| THE COURT: | You'd seen it before, right?  It wasn't just attached in Mr. Wright's letter. |
| MR. FRYDMAN: | Yes, it was in the other papers as well. |
| THE COURT: | Right.  So let's start with some ground rules when you appear before me.  Never say anything that's not true.  If you don't know whether something is true or not, make that clear.  But it is just wrong to say you had never seen it before when it was attached to the other papers. |
| MR. FRYDMAN: | Your Honor, it was attached.  I did not review the attachments to the other papers.  Okay. I saw it for the first time this morning, but I do understand it was attached. |

(Wright Aff. Ex. K, Transcript pp. 5-6).  Did the Court notice, JF never answers the question.

---

[12]  As we previously pointed out, he also apparently signed attorney Fischbein's name.  Frydman has also in the past while acting as pro se litigation with co-counsel, taken liberties with signing the licensed attorney's name to pleadings.  In one case, he had his assistant, Daniel Edelman, sign the real attorney (Katherine Sherman) name to a lengthy federal court RICO complaint.  See Exhibit MM, Panzer RICO complaint 11/3/14, signature page "dce", Frydman's assistant, Daniel C. Edelman.

But that was NOT the first time Frydman had seen this list.  Substantially the same list was attached as an exhibit to the state court complaint that Frydman had seen lots of copies of, since 12/14/14.  See Wright Aff. Exhibit A, LP Complaint, attachment to complaint "Frydman Lawsuits, revised December 12, 2014."[13]  Thus, even when directly confronted with his lying, Frydman 'doubled down,' and lied some more.

Perhaps causing even more work, Frydman repeatedly alleges that the state court LP complaint was "utterly untruthful," "completely baseless," and he lists a host of specifics, which he claims are specifically false.  See Complaint Para. 237 subpar. "a" through "ll."  For the most part, the alleged offending statements are expressions of opinion or interpretation of identified documents[14]; however, Frydman states that a number of factual averments in the state court complaint are factually false.  In fact, as shown below, the state court LP complaint was well-supported by documentary evidence, and it is *Frydman's* statements that are demonstrably false.[15]  To the extent that Frydman is able to rebut one or two statements of fact in the lengthy

---

[13]  Note that this Frydman Lawsuits list must be periodically updated, because Frydman files new lawsuits averaging about one per month.

[14]  For example, whether the sale violates the LP Agreement and the terms of the Irrevocable Commitment dated September 17, 2012.  Complaint Para. 237-k and l

[15]  Thus, it cannot be seriously undisputed -- despite Frydman's protestations -- that he was personally being sued for millions; that he and his entities had unsatisfied judgments; that he had failed to disclose his own prodigious litigation history in the "background" section of SEC filings; that he also failed to list the Savoy project in the REIT prospectus; that he uses layers and layers of LLCs to avoid creditors.  Complaint Para. 237-c, d, t, u.

LP complaint, this hardly renders the pleading "baseless."[16]  See Section II-B below.

These examples demonstrate that Frydman is perfectly willing to make material misstatements of fact, and to 'double down' by submitting it to a federal judge, even where the statements are demonstrably false.  The point is that if someone lies repeatedly on matters we can easily disprove,[17] and if the other allegations not so easily disproved, they should be subjected to serious plausibility scrutiny.

### *The Complaint is not plausible*

Centrally, the pro se professional litigator plaintiff cannot allege a "plausible set of facts" sufficient to support the racketeering claims, let alone to sustain any complaint.  See Ashcroft v. Iqbal, 556 U.S. 662 (2009); Federal Rule 9(b).  In *Ashcroft*, the Court explained:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Id., at 570, 127 S.Ct. 1955. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id., at 556, 127 S.Ct. 1955. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Ibid. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' " Id., at

---

[16]  For example, Frydman repeatedly argues that DW misinterpreted Justice Madden's decision in the Savoy Little Neck case; even if JF correct, this hardly renders that discussion incorrect or 'false.'  The point of that discussion was to show how Frydman utilizes layers of LLCs to shield himself from personal liability, and thereby cheats people with whom he does business ... then enmeshes them in furious litigation until the statute of limitations runs.

[17]  The page limit prevents us from documenting the many, many instances in which Frydman has lied about the state court LP complaint.  See Point II-B below, and throughout.

557, 127 S.Ct. 1955 (brackets omitted).

Two working principles underlie our decision in Twombly. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Id., at 555, 127 S.Ct. 1955 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Id., at 556, 127 S.Ct. 1955. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. 490 F.3d, at 157–158. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

## *I*
### *Frydman fails properly to plead a RICO*
### *scheme, pattern or enterprise*

The pro se plaintiff fails to plead a R.I.C.O. enterprise-in-fact, instead setting forth a series of facially unrelated acts without a hint of how they are related, or constitute a RICO scheme or RICO enterprise or pattern.  Nor was this closed-end pattern of sufficient longevity to meet Second Circuit continuity standards.

### *There is nothing to suggest DW joined an alleged enterprise-in-fact*

In his new and overhauled Complaint, Frydman fancifully creates something he calls "the Ring."  Conveniently, this is the group of people on the south side of the caption, or as

he might say, "Enemies of Frydman."  Other than that, there is nothing in the complaint to

suggest these people constitute an "enterprise" within the meaning of the RICO law.  See

Complaint Para. 285, for example.

      The "mission" of the enterprise is to "harm Frydman" and his companies, and to

deceive the public.  (Complaint Para. 18).  As to DW, the only factual allegations are

summarized as follows:

> ### i.  Wright represented APF defending a frivolous Frydman lawsuit, got it dismissed and was awarded some $39,000 in attorneys fees against Frydman, which Frydman would not -- or could not -- pay

      DW represented a client, APF Fire Protection, in a litigation matter (Para. 29).

See Wright Aff. Exhibits M to U - Ledgerock pleadings.  In fact, this was described in detail in

the State Court LP complaint – which Frydman refers to as the "Second Defamatory Lawsuit."

See Wright Aff. Exhibit A, LP Complaint at Para. 49 et seq.[18]  It is not known if JF somehow

claims this is actionable, but we submit that it is not.

> ### ii.  Wright gave an interview to the New York Post, unflattering to Frydman

      DW gave an interview to the New York Post in November 2014, which was not

flattering to Jacob Frydman.  A copy of that article is submitted herewith, Wright Aff. Ex. YY,

and shows that DW did indeed say some mildly negative things about Frydman in connection

with the APF litigation.  Allegedly, EV introduced DW to the reporter.  How this makes DW a

---

    [18]  From this experience, DW was able to see how Frydman operates: (a) set up layers of

LLCs to shuttle funds and confuse potential creditors; (b) use United Realty personnel as if it

were your piggy bank, ( c ) where possible, don't pay your bills; and (d) if people sue you, you

countersue them and bludgeon them with mostly-baseless litigation until they succumb.

RICO conspirator and member of "the Ring," is entirely within Frydman's vivid imagination. As discussed below, there was also nothing libelous about the article. See Point II-D below.

### iii.  DW allegedly 'induced' Al Akerman to steal confidential information from United Realty?

Frydman alleges that DW "induced" and "solicited" Akerman to steal confidential information. E.g. Para. 227. Not only is this unsupported and implausible (there is no allegation that DW even knew Akerman, let alone as a 'powerful Peekskill lawyer' could somehow 'induce' a Chief Compliance Officer at a federally-regulated entity, to steal and give to DW confidential material), but Frydman admits in the Complaint, that he, JF, discovered that AA had given the confidential material to Eli V.  (Complaint Para 223).   It is also inconsistent with what JF has told the Court he discovered in AA's emails, which was that AA gave the information to EV.  In telling how DW became involved with Verschleiser and the state court LPs, JF has previously sworn that it was because, in 2014, DW represented APF Fire Protection in litigation with JF, successfully dismissing JF's claim for $100,000 against APF and getting an award of attorney's fees of more than $30,000 against JF's entity.[19] Wright Aff. Ex. J, JF Decl. 12/29/14 at Para. 28 et seq.[20]  Moreover, in the Transcript 01-05-15, JF blamed everything on Verschleiser:

---

[19]  In classic Frydman fashion, Frydman put his house into an LLC.  Its construction was overseen and funded by at least two different LLCs; although Frydman says it was completed long before United Realty was formed, the public records show him in litigation with creditors right up to the present.  Wright Aff. Ex. M to CC; and Ex. A attachment, litigations list.

[20]  Note that, although Frydman obtained all of Akerman's emails going back several months, he is not able to cite any communication between Akerman and Wright, suggesting

Mr. Frydman: Your Honor, hell hath no fury like a former real estate partner scorned.
I am living through what has been for me a hell since December 3 of 2013. And I'm here today because of the latest in a long series of what I believe are RICO actionable wrongs that have been committed against me and my companies by Mr. Verschleiser. (Wright Aff, Ex. K - 1/5/15 Transcript p. 5)

Seems like JF cannot keep his stories straight.

The 'confidential information' utilized by DW in the state court complaint consisted of (a) the sale agreement, and (b) records of JF's excessive compensation, i.e. thievery from, the LP's. On its face, the sale agreement does *not* indicate that it is confidential. See Wright Aff. Ex. A - LP Complaint exhibit - sale agreement.[21]

Question: is it plausible that DW's receipt and use of internal documents concerning Frydman's excessive compensation, (a) constituted the commission of a crime, and (b) caused injury to Frydman. There is nothing in the Complaint to suggest DW had any access to the information to be able to steal it; rather, the plain meaning of the Complaint is that DW received it from someone – presumably one of his clients the Limited Partners, or from Akerman or Verschleiser – and referenced it in the LPs' state court complaint. Under the LP Agreement, the LP's had the right to access internal business information of the LP. Does this constitute a crime? Certainly the Complaint does not suggest how.

---

Wright was intent on stealing any confidential information. To the contrary, the plausible explanation for the two emails on which AA was copied, were sent simply because AA was an LP who might want to join in the state court lawsuit.

[21] Compare Frydman's statement to the Court, that the agreement states it is to be held confidential. Just another example of JF stating something, as a fact, that is demonstrably untrue.

-12-

There is nothing to suggest DW "stole" information about the sale, or Frydman's compensation.[22]  Used it, yes.  Nor is there anything in the agreement stating that it will be kept confidential.[23]  Frydman's Limited Partners had the right to the information about their business partner.  See LP Agreement, Wright Aff. Exhibit A - exhibit - LP Agreement.  Apparently, the sole basis for Frydman declaring this to be a theft of "confidential information," is a clause he inserted into the LP agreement, stating that "confidential information" was anything that Frydman declared to be confidential.[24]  Even assuming this clause is enforceable for purposes of the criminal law, there is no fact alleged in the Complaint to suggest that the documents *were* in fact ever designated as "confidential" by Frydman at any time prior to the information being used in the LPs' complaint.

> ***It must be shown that the defendant's conduct was the factual and proximate cause of the plaintiff's injury to its business or property***.

Frydman also cannot plausibly allege that DW's use of the allegedly 'confidential information' – referencing it in a litigation that is absolutely privileged and was never published

---

[22]  Indeed, both in the current Complaint, and in prior sworn statements, JF always described DW as an unwitting participant in EV's schemes.  JF has described DW as being an unwitting participant, a "dumb lawyer," Wright Ex. J - JF Decl. 12/29/14 at Para. 32.

[23]  A copy of the Sale Agreement is attached as Exhibit A - LP Complaint - exhibits.  As can be seen, there is nothing in the Agreement stating that the Agreement is required to be held confidential.

[24]  See Wright Affirmation, Exhibit A - LP Complaint - exhibit LP Agreement, page 3 definition of "Confidential Information."

-13-

– in any way damaged him personally.  First, because he was not a party to the sale agreement, and has no standing to assert the entities' claims.  Second, because it's an undisputed fact, the buyer canceled the deal because FINRA did not approve it.  Wright Aff. Exhibit F, termination letter.[25]  Third, the 'confidential information' was not disseminated to anyone, other than to the other party to the 'confidential' agreement.

Frydman also says DW will continue to disclose the 'confidential information.' But this is directly inconsistent with the facts.  When DW filed the state court lawsuit, JF and counsel contacted DW and requested DW consent to a sealing order, which DW did, one day after the filing of the suit.  Wright Aff. Ex. C.  There is no factual allegation anywhere in the Complaint that the state court suit was ever published or disseminated by DW.  When JF sought a TRO in the instant federal action, DW did not object, explaining that he had already consented to a sealing order.  Wright Aff. Exhibit L, letter to Judge Koetl.

### iv.  DW did not file a baseless lawsuit and had real clients

The Complaint alleges that DW then used that confidential information to file a baseless lawsuit, purpose of which was to harm JF, which lawsuit then was, variously, "disseminated," and "published."  A host of accusations are made that the clients knew nothing about the lawsuit; that the suit was contrived by Verschleiser; that the allegations were outrageous and baseless, and that the lawsuit was filed solely to harm Frydman or to stop the sale.[26]

---

[25]  This document has been submitted by JF as an exhibit in the state court LP lawsuit.

[26]  There is no dispute the state court lawsuit was filed to stop the sale, for all the reasons set forth therein.

Plaintiff alleges that DW had not met with his clients before the first draft of the complaint in that case, when DW had a conference call with his clients to discuss the draft complaint on December 7, 2014 at 7:00 p.m.  Complaint Para. 32-33.  (Note this was fully one week before the Complaint was filed.)

Plaintiff cannot use attorney-client privileged communications to support his lawsuit.  Plaintiff also cannot use references to depositions of the LP's, since DW was not given any notice nor an opportunity to attend and participate in such depositions.

Not surprisingly, most if not all of the Limited Partner plaintiffs quickly abandoned the lawsuit when Frydman sued them all personally for racketeering.[27]  Facing the prospect of tens of thousands of dollars in attorney fees to defend themselves from the instant frivolous lawsuit, they "sang for their supper," some claiming not to know David Wright, etc ... but surprisingly, despite the circumstances, most of them stood up to JF and were able to say they knew DW, some met him, all spoke with him and it's undisputed they saw the first draft of complaint well before it was filed.  See Wright Aff. Ex. G, deposition excerpts.  Prior to meeting Wright, the LPs had, for years, been encouraged into action by Verschleiser.  Frydman, 12/29/14 Declaration Para. 23 - 27 (Wright Aff. Ex. J).

---

[27]  Frydman sued all the LP's personally in this action in December 2014.  Thereafter, he was permitted in the state court to conduct their depositions.  See Wright Aff. Ex. G, excerpts.  As can be seen, DW was not given notice nor present.  The LPs – apparently 'singing for their supper,' in many cases agreed with whatever JF asked – even if inconsistent with documents they signed (such as Jaffa who signed the preliminary injunction affidavit), and were then promptly dropped as defendants.

On December 14, 2014, DW filed the lawsuit on ECF.

### v. The Complaint does not meet the legal standard for pleading enterprise-in-fact

To plead a RICO enterprise based on this type of association-in-fact requires proof of much more than a handful of isolated allegedly wrongful acts. The Complaint must contain factually plausible allegations that all the defendants were "associated together for a common purpose of engaging in a course of conduct," including (1) course of fraudulent or illegal conduct separate and distinct from the alleged predicate racketeering acts themselves; (2) an "ongoing organization, formal or informal," (3) "evidence that the various associates" of the alleged enterprise functioned "as a continuing unit." ; (4) solid information regarding the "hierarchy, organization, and activities" of this alleged association-in-fact enterprise; (5) from which we could fairly conclude that its "members functioned as a unit". As the Second Circuit explained:

> The alleged illegal purpose of the ... Enterprise was to "conceal [ ] Sohrab's assets from his creditors, the bankruptcy court[,] and Sohrab's Chapter 7 Trustee." The Amended Complaint fails, however, to detail any course of fraudulent or illegal conduct separate and distinct from the alleged predicate racketeering acts themselves—a requirement in this Circuit. See First Nationwide, 820 F.Supp. at 98. Plaintiffs certainly have not advanced any factual allegations that the Vahabzadeh Enterprise was an "ongoing organization, formal or informal," or any "evidence that the various associates" of the alleged enterprise functioned "as a continuing unit." Turkette, 452 U.S. at 583, 101 S.Ct. 2524. Moreover, Plaintiffs have failed to provide us with any solid information regarding the "hierarchy, organization, and activities" of this alleged association-in-fact enterprise, United States v. Coonan, 938 F.2d 1553, 1560–61 (2d Cir.1991), from which we could fairly conclude that its "members functioned as a unit," Nasik Breeding & Research Farm *175 Ltd. v. Merck & Co., 165 F.Supp.2d 514, 539 (S.D.N.Y.2001). Thus, there is no basis to support the conclusion that the supposed constituent entities of the Vahabzadeh Enterprise were "associated together for a common purpose of engaging in a course of conduct." Turkette, 452 U.S. at 583, 101 S.Ct. 2524.
> Moreover, Plaintiffs have both failed to allege a nexus between the ... Enterprise and the alleged RICO predicates and failed to explain each participant's role in the

alleged course of fraudulent or illegal conduct.  See Bernstein v. Misk, 948
F.Supp. 228, 235 (E.D.N.Y.1997) ("The indifferent attempts to plead the
existence of an enterprise fall short of their goal in that they frustrate assiduous
efforts to identify its membership, its structure (formal or informal), or its
functional unity.").  Plaintiffs' "conclusory naming of a string of entities does not
adequately allege an enterprise."  Moy v. Terranova, 1999 WL 118773, at *5
(E.D.N.Y. Mar.2, 1999) (internal quotation marks omitted); see First Nationwide,
820 F.Supp. at 98; accord A. Burton White, M.D., P.C. v. Beer, 679 F.Supp. 207,
210–11 (E.D.N.Y.1988); see also Richmond v. Nationwide Cassel L.P., 52 F.3d
640, 646 (7th Cir.1995) (affirming dismissal of complaint).  Accordingly, we
conclude that Plaintiffs have failed to allege adequately that the ... Enterprise was
indeed a RICO enterprise.

First Capital Asset Management, Inc. v. Lievense, 385 F.3d 159 (2d Cir. 2004)

As set forth above, the Complaint does not nearly approach this threshold, and
therefore must be dismissed.

### vi. The pattern is closed-end, and not of sufficient continuity

Although as to DW, the Complaint purports to include DW as a member of an
ongoing, i.e. "open ended" RICO pattern, the undisputed facts show that this cannot be pleaded
with any plausibility.  If anything, the Complaint pleads, as to DW, a closed-end RICO pattern.[28]
But in such a case, the courts have held a closed-end pattern must have a certain longevity or

---

[28]  There is no factual allegation that DW did anything or even knew Verschleiser prior to
November 2014, and it is a matter of judicial notice that DW withdrew as counsel from the state
court LP action in January of 2015 see Substitution dated Jan. 20, 2015, Wright Aff. Exhibit D;
there is no factual allegation that DW did anything after January 2015, nor any facts to suggest
that he has threatened to or will do anything – other than to defend himself from multiple
frivolous litigations filed by the pro se litigant Frydman.  E.g. Wright Aff. Ex. F, state court
sanctions notice of motion.

"continuity"; short term patterns are not the target of the RICO law.  See e.g. First Capital Asset Management, Inc. v. Lievense, 385 F.3d 159 (2d Cir. 2004) (seven months too short to meet closed-end enterprise continuity requirement).

Generally, the Second Circuit has required at least two years.  See Metromedia Co. v. Fugazy, 983 F.2d 350, 369 (2d Cir.1992) (continuity element satisfied where the related predicate acts spanned approximately 24 months.), cert. denied, 508 U.S. 952, 113 S.Ct. 2445 (1993).  There, the Court stated:

> Though there is no bright line test for determining precisely what period of time is "substantial" for purposes of finding the continuity necessary to establish a RICO pattern, the Supreme Court in H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989), stated that "[p]redicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement." Id. at 242, 109 S.Ct. at 2902. Periods of 19 or 20 months, however, have been held sufficient to support a finding of continuity, see United States v. Pelullo, 964 F.2d 193, 210 (3d Cir.1992) (19 months sufficient); United States v. Stodola, 953 F.2d 266, 270 (7th Cir.1992), (closed-ended period of 20 months sufficient), cert. denied, 506 U.S. 834, 113 S.Ct. 104, 121 L.Ed.2d 63 (1992), and "where continuity can be inferred from the jury's findings, an erroneous instruction may constitute harmless error." United States v. Pelullo, 964 F.2d at 209; see United States v. Kotvas, 941 F.2d 1141, 1144–45 (11th Cir.1991).

Here, the only facts set forth concerning DW are that (a) he gave an interview to the New York Post in November 2014 that was unflattering to Frydman, and (b) he used allegedly confidential information in the filing of an allegedly baseless lawsuit in December 2014, which was attempted by somebody to be disseminated, but never was.  In fact, the undisputed documentary evidence is that DW withdrew from the state court case after he was sued by JF[29] in the instant case, in January 2015.[30]  It is also undisputed that two days after filing

---

[29]  JF named DW and all his LP clients as defendants in the amended pleading filed

the state court suit, upon defendant's request, DW consented to have it sealed.[31]

Other than Frydman's unsupported allegation, there is nothing to suggest that DW did anything to harm Frydman either before November of 2014, or after January of 2015, i.e. a total span of two months.[32]

Accordingly, the pleading of RICO scheme, pattern and enterprise are deficient.

## II
### The Complaint fails properly to plead predicate acts under Rule 9(b), plausibility, and applicable wire fraud statute

The Complaint appears to allege that DW (a) induced the theft of confidential data and then disseminated it, and (b) falsely verified a baseless state court complaint.

### A.  The predicate acts are not properly pleaded or are implausible

Frydman alleges the following predicate acts by DW.

**Sixth Predicate Acts** ( Para. 220 et seq.) – claims DW variously "recruited" or "induced" Akerman to steal confidential information.  (Para. 221, 227).  Frydman then states he has Akerman's emails from the time prior to December 15, 2014, when Akerman was fired.

---

December 2014, creating a conflict between DW and his clients, requiring withdrawal as counsel.

[30]  See Substitution of Counsel DW withdrew from state LP case, January 20, 2015, Wright Affirmation Exhibit D.

[31]  See Stipulation sealing file, Wright Affirmation Exhibit C.

[32]  In the prior pleading, JF suggested DW's involvement was "since the Fall of 2014." First Amended Complaint, DW Aff. Ex. H at Para 212.

(Para. 223).  At some unspecified time between December 2013 and November of 2014,

Frydman alleges DW joined the emails.  Since JF is in possession of those emails, he could easily

have stated a date; his failure to do so warrants the inference – consistent with the facts – that

DW did not know any of these people prior to November 2014.

    *Tenth Predicate Acts* (pp. 60 et seq) – claims DW committed perjury by verifying

the state court complaint, (Complaint Para. 280, 312 et seq), much of which is alleged on

information and belief or is a factual recitation from documentary evidence and public records.

Frydman's claim is based on the verification of 30-some specific allegations in the state court LP

complaint.  (Complaint Para. 312 et seq).

### B.  The state court LP action was not baseless, nor was its filing actionable

### i. The suit was factually detailed and well documented

    The LP Complaint specifically says it's only verified by counsel, because the

clients are outside the county where counsel maintains an office.

    Most, or all, the cited allegations are alleged at other places, "upon information

and belief," and there is nothing to suggest that - even if some of the statements ultimately prove

to be incorrect - there was any intention to make an untruthful statement.[33]

    Many of the cited allegations are not statements of fact, but either (a) conclusions

drawn from other allegations in the pleading, or (b) opinions – sometimes factual sometimes

legal.[34]  For example, that Frydman has no right to sell the assets.  (item "j").  Or, that the Sale

---

[33]  Again, recall the stringent standard that the pro se pleader needs to satisfy: that the

pleading was filed maliciously, i.e. intentionally false and solely to harm the defendant.

[34]  Statements of opinion are not actionable.

transaction constitutes a breach of the LP Agreement.  (item "k").  That a non-disclosure of the

Savoy matter violated securities laws.  (item "t")  Or whether buying a Note just to sue on it,

constitutes champerty.  (item "z").[35]  Or that Frydman had no legal right to assign a promissory

note, or to use it as an asset of the REIT.  (item "gg")  Or that Frydman had a fiduciary duty to

communicate certain information to the limited partners.  (item "hh")  Or that the effect of an

alteration to the LP Agreement was, under the terms of the Agreement, to give Frydman a larger

profit-sharing percentage.  (item "ii").  Or that "it is believed" Frydman used corporate assets to

pay for construction of his multi-million dollar home.  (item "kk")

       Other statements cited by Frydman as perjurious, are demonstrably true.  Such as,

Frydman had a number of unsatisfied judgments against his entities.  (item "c").[36]  Or that

Frydman had recently been sued for millions of dollars for non-payment of loans and other

breaches.  (item "d").[37]  Or that Frydman uses the company lawyer for personal litigations.  (item

---

[35]  Justice Pagones observed, this was a specific allegation in the Parker Note litigation.
Wright Aff. Ex. RR.

[36]  LP Complaint Para. 92, et seq.  See judgments attached to Wright Affirmation as
Exhibits Q, LL and SS.  Note that recently, Frydman finally paid off the APF Judgment, after
three contempt motions.  Wright Aff. Ex. R, S and T and U.  It cannot be disputed that all these
judgments – matters of public record – were unsatisfied at the time of the filing of the "baseless
lawsuit."

[37]  E.g., LP Complaint Para. 77-87 et seq.  See Wright Affirmation, Exhibit A - LP
Complaint attachment, lawsuits against JF on loan guaranties, and non-payment of notes.

"f").[38]  Or that the judge in the *Savoy* case cited Frydman's having looted his entities and forged

a substantial check.  (items "g," "o," "p," "q" etc).[39]  Or that Frydman failed to disclose the Savoy

project in his 'background,' in the REIT prospectus.  (item "t").[40]  Or that the Savoy plaintiffs

were not able to pierce through the layers of LLCs Frydman created, by the time the statute of

limitations ran.  (item "v").[41]  Significantly, nowhere does Frydman plead that the allegations

were incorrect, only that we misinterpreted Justice Madden's decision; the fact is, Frydman,

---

[38]  See Wright Affirmation Exhibits P, showing the use of lawyers then employed with

United Realty, to represent JF in personal lawsuits ($25,000 bill filed by United Realty lawyer

Daniel Edelman, in APF litigation, involving Frydman's personal residence).  And see LP

Complaint Para. 53A i - ii.

[39]  LP Complaint Para. 39 et seq.  See Wright Affirmation Exhibit TT, Justice Madden

decision in Savoy litigation.  The decision discusses a motion to dismiss, and a motion for

summary judgment; assuming the DW misconstrued the decision, this could not be fraudulent

because (a) it's a fair interpretation; (b) of a publicly-available document.  See *Cudemo v. Al and

Lou*, 54 A.D.2d 995, 387 N.Y.S.2d 929 (3d Dept. 1976) (pointing to a garage and saying "it's a

three-car garage" when in fact, one can see it only fits two cars, is not fraud) ("if the facts

represented are not matters peculiarly within the party's knowledge, and the other party has the

means available to him of knowing, by the exercise of ordinary intelligence, the truth or the real

quality of the subject of the representation, he must make use of those means").

[40]  LP Complaint Para. 44 et seq.  See Wright Affirmation Exhibit XX, REIT Prospectus,

indicating no disclosure was made concerning the Savoy-Little Neck project.

[41]  LP Complaint Para. 42 et seq.  See Wright Affirmation Exhibits SS and TT.

through the use of LLC shells, was able to deprive his former business associates of hundreds of thousands of dollars and they were never able to satisfy their judgment.

Other statements cited by Frydman as perjurious are expressly made "upon information and belief."  For example, item "i."  To the extent that any of the cited examples do not fit into one (or more) of these categories, and in the event the allegations ultimately are not proven to be true – or are shown to be false – (i) they are not material, (ii) there is nothing to suggest their utterance was wilful or uttered with an intent to mislead.  If counsel neglects to add "information and belief" to an isolated allegation in the lengthy pleading, this is hardly fodder for a perjury prosecution.

We cannot be expected to counter every single accusation by Frydman.  The Court should examine the LP Complaint, which is a well-written and detailed exposition of its claims; in addition, should the Court seek corroboration, attached to the Wright Affirmation are public records and undisputed documentary evidence supporting the central thesis of the complaint, that Frydman was a thief who used litigation as a bludgeon; that he was being sued for millions of dollars on personal guarantees and otherwise; so starved for cash that he could not pay several judgments; embroiled in horrific litigation with his former partner; that his litigious behavior had recently reached new and bizarre lows;[42] and that the LPs had good grounds to seek to stop Frydman's activities – especially including a sale that violated agreements.  It is not a pleading that could be said to be baseless.[43]

---

[42] Seriously, a federal lawsuit against the American Jewish Congress?  Wright Aff. Ex. DD, complaint and EE, dismissal.

[43] The state court did not, after all, enjoin the sale transaction.

Frydman concludes that the making of such allegations constitutes defamation. First Amended Complaint Para. 317.  However, as noted above, it is not the making of allegations in a lawsuit that can be actionable under *Williams*; it is the preparation and filing for the specific purpose of dissemination to the media - something that's not happened here.[44]

### ii.  Frydman has now asked the state court to find that the lawsuit was baseless; this Court should defer

Frydman recently – even though a motion to dismiss remains *sub judice* – filed a motion for sanctions, asking the state court judge to find that the filing of the state court LP suit was baseless.  See Wright Aff. Ex. E.  By asking for the same relief here, Frydman invites inconsistent decisions.  Whether in res judicata principles or abstention, this Court should not undertake the same task as Frydman has already imposed on the state court.

### iii.  Legal standard: absolute privilege

The filing of a litigation, and the statements made in litigation, are absolutely

---

[44]  DW pointed out in his pre-motion letter to the Court, that the filing of a lawsuit – even if it were baseless, as Frydman alleges – is not actionable, absent dissemination of that Complaint.  In response, in the Second Amended Complaint, Frydman corrects his pleading to state that the supposedly baseless lawsuit was in fact "disseminated."  Where, how and to whom, is, once again, undisclosed by Frydman (except to say Verschleiser emailed it).  The Complaint does not even hint that the contents of the lawsuit were ever published, for example in an article, only that a reporter from the Investment News got wind of it.  It's safe to assume that the otherwise loquacious Frydman would allege a publication, had there been one.  The lack of such a publication is fatal to all claims based on the supposedly "baseless lawsuit."

privileged under New York law.[45]  As we taught Mr. Frydman in our pre-motion letter, however, the New York Court of Appeals carved out an "exceedingly narrow exception," where the malicious filing of a baseless lawsuit is filed for the purpose of disseminating the supposedly baseless allegations.  See Williams v. Williams 23 N.Y.2d 592, 298 N.Y.S.2d 473 (1969) and as explained in Long v. Marubeni America Corp., 406 F. Supp. 2d 285, 294 (S.D.N.Y. 2005). There is no evidence nor any plausible allegation that DW disseminated the contents of the complaint; the opposite is true from the public records.

Here, JF now says it was *Verschleiser's* intention that the "baseless lawsuit" be filed for the purpose of disseminating it (Complaint Para. 238), and that *Verschleiser* sent the email to The Investment News.  (Complaint Para. 239)  JF does not say that DW filed it with this intention, or that DW did anything to disseminate it.  Apparently, DW's liability is based on DW being part of "the Ring," or the RICO enterprise-in-fact which, as shown above, is non-existent.

Although Frydman claims DW filed a baseless lawsuit to harm Jacob Frydman, he does not allege (nor can he) that DW sought out the media or did anything to publicize the lawsuit.  In fact, Frydman does not allege that the state court lawsuit's allegations were ever published by any media outlet; nor is there any explanation for how any plaintiff suffered any injury from Verschleiser emailing a copy of the LP Complaint to a reporter, who did not publish

---

[45] *Wiener v. Weintraub*, 22 N.Y.2d 330, 332, 292 N.Y.S.2d 667, 669 (1968) ( "There can, of course, be no doubt that statements made by counsel and parties in the course of 'judicial proceedings' and privileged as long as such statements 'are material and pertinent to the questions involved * * * irrespective of the motive' with which they are made.")

it.[46]

Frydman also admitted in the prior pleading that DW immediately stipulated to provisional seal, i.e. confidentiality, one day after filing the state court suit, on December 15, 2014.  First Amended Complaint, Wright Aff. Ex. H, Para. 282.[47]  This is the same DW who filed the lawsuit specifically to disseminate it?  The newest Complaint alleges as dissemination, only that *Verschleiser* emailed the lawsuit to The Investment News.  Para. 239.[48]

Question: how is the reference to the sale agreement, in a pleading served on a party to that agreement, a violation of anything?  Assuming it violates a contract or a law, how does it damage Frydman or his entities?  Frydman insinuates that DW "disseminated" reports about the complaint to the media (but cites to nothing), but the only dissemination apparent from the Complaint is its service on the purchaser, with the allegation that the LPs objected to the transaction for a multitude of reasons.  All those actions are undisputedly protected by an absolute privilege, but even if they were not, caused no harm to Frydman.

---

[46] Even for libel per se, there "must be some allegation tending to establish that its business reputation was harmed."  *Sandals Resorts Int'l, Ltd. v. Google, Inc*., 86 A.D.3d 32, 925 N.Y.S.2d 407 (1ˢᵗ Dept. 2011).

[47] Frydman has carefully deleted from the latest complaint, a key admission he made in the last version – that DW immediately consented to a sealing order with respect to the state court complaint.

[48] Again, there is no allegation that *The Investment News* – or any other media – ever published the contents of the lawsuit, or any aspect of it.

### C.  There is nothing in the New York Post article that is actionable.

As can be seen, the New York Post article (Wright Aff. Ex. YY) contains no statements that might even remotely be considered actionable under New York law.  Statements such as "penny pincher," are clearly references to Frydman's having countersued APF for $100,000, after receiving a $6,700 bill; in fact, Frydman's countersuit was dismissed and APF recovered over $39,000 in attorneys fees and court costs.  The article recounts some nine litigations.  Which is quite favorable to Frydman, since there were at least 18 suits.[49]

### D.  Use of confidential information

The only "evidence" of David Wright doing anything wrong, allegedly in breach of agreements between the LP's and the GP of United Realty LP, was the receipt and incorporation into a legal pleading of two pieces of internal documentation, (1) the Sale Agreement (which is *not* on its face "confidential" - nothing in the document says the parties agreed to keep it confidential, and (2) records of Frydman's taking money from the company.  Immediately upon demand, DW agreed to the limited sealing order, and there is no factual allegation that the information has ever been disclosed.  How this rises to enmesh DW into a RICO litigation between EV and JF is unsupported.

### E.  Perjurious verification of LP complaint

The various allegations that DW verified a complaint to commit fraud and perjury is entirely unsupported.  First, almost every item in the detailed listing of supposed misstatements that I verified as true, are either (a) conclusions drawn from other matters alleged in the pleading, (b) legal allegations, ( c ) demonstrably truthful statements, by reference to documents, or (d)

---

[49]  See list in LP Complaint (Wright Aff. Ex A) Para. 51.

alleged on information and belief there or elsewhere in the pleading.  Certainly there is no factual

allegation sufficient to suggest fraudulent intent.  See Katzman v. Victoria's Secret Catalogue,

167 F.R.D. 649, 655 (S.D.N.Y. 1996)(claim held deficient, *inter alia*, because it "fails to provide

any factual basis for her conclusory allegations of fraudulent intent").  In Katzman, the Court

added:

> In order to plead a claim of mail fraud, a plaintiff must allege "factual
> circumstances giving rise to a strong inference that the defendant had the requisite
> fraudulent intent." Zaro Licensing, Inc. v. Cinmar, Inc., 779 F.Supp. 276, 281
> (S.D.N.Y.1991) (citing, inter alia, Ouaknine v. MacFarlane, 897 F.2d 75 (2d
> Cir.1990)).

### F.  Failure to plead "intent to profit" means DW could not be guilty of wire fraud

The complaint does not properly allege any predicate acts by DW.  Apparently,

the intention was to claim that DW made a series of false statements about JF, then transmitted

those statements over the wires (by Internet).  However, this does not constitute wire fraud absent

pleading of an intention to profit.  In Reich v. Lopez, 38 F. Supp. 3d 436, 450 (S.D.N.Y. 2014),

the Court explained:

> While Plaintiffs have sufficiently alleged actual injury, a wire fraud scheme to
> defraud also requires that Defendants intend to obtain property, a claim which is
> lacking in Plaintiffs' allegations.  Although it is well established in this Circuit
> that wire fraud does not require proof of actual profit from the scheme to defraud,
> intent to profit is still necessary.  See Porcelli v. United States, 404 F.3d 157, 162
> (2d Cir.2005) (quoting McNally v. *451 United States, 483 U.S. 350, 358–359,
> 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987)) ("The second clause, 'or for obtaining
> money or property,' was intended to be read in connection with 'any scheme or
> artifice to defraud.'  The statute has thus been interpreted to criminalize any
> scheme or artifice for obtaining money or property" but "the defendant does not
> need to literally 'obtain' money or property to violate the statute"); Boritzer, 2013
> WL 311013, at *6 (quoting Drexel Burnham Lambert Inc., 777 F.Supp. at 238)
> ("[I]n order for the deceit implicit in fraud to rise to the level of wire fraud in

particular, 'defendants must have used the ... wires as a means to obtain money or property.' "). In this case, while Plaintiffs allege that Defendants intended to deprive them of money or property, they have not alleged that Defendants intended to obtain money or property as a result of their scheme. Nor could they plausibly do so: Defendants are not a market competitor of Plaintiffs such that they would expect to gain from Plaintiffs' loss of clients. Consequently, while there may be intent to harm, there is no intent to obtain property from Plaintiffs, and there is no scheme to defraud within the wire fraud statute.

Here too, even if plaintiff *had* pleaded an intention to profit from the alleged filing of a baseless lawsuit – which he did not plead -- there is no plausible basis. To the contrary, JF claims that, as a result of a private litigation matter, DW hated him, and did so to harm JF, not to enrich DW.


### III.
### There is no RICO Injury and Frydman
### Individually Lacks any Standing

Frydman's central claim is the disparagement of JF. None of the posts said *United* was a defrauder. The posts said *Frydman* was a defrauder, a crook, a thief, someone who does not honor his obligations. As much as Frydman denies it, those allegations are, as a matter of law, undisputedly truthful. He is a defrauder, he has defaulted on a host of legal obligations, and he is a criminal, albeit apparently not a convicted one. Which is probably the real reason he seeks a cloak of confidentiality – so it's harder for plaintiffs' lawyers to connect the dots.

In Counts I and II, the RICO claims, JF is the only plaintiff that is suing DW; the other plaintiffs are not suing DW on these counts. See Complaint Para. 298 and 307. (Probably this is because attorney Fischbein correctly refused to affix his signature to such a pleading.)

Frydman fails to show how, as a shareholder or member of any of the plaintiff entities, he has standing to sue for damages to those entities (claims which the entities, which he

controls, have refused to bring).  See e.g., <u>Manson</u> v. <u>Stacescu</u>, 11 F.3d 1127, 1131 (2d Cir.

1993) ("A shareholder generally does not have standing to bring an individual action under RICO

to redress injuries to the corporation in which he owns stock."); <u>At the Airport</u> v. <u>ISATA, Inc.</u>,

438 F. Supp.55, 62 (E.D.N.Y. 2006) (RICO proximate causation requirement "generally prevents

a party, such as a shareholder in a corporation or a member of a limited partnership, from

asserting a RICO cause of action in his or her individual capacity based on claims of injury

suffered by a third-party in which he or she has a financial interest.").

>  ### i.  *Frydman personally has no right to assert his personal humiliation, damage to his reputation, as RICO Injury.*

Damage to one's reputation generally is not considered to be RICO injury.

<u>Hollander</u> v. <u>Flash Dancers</u>, 340 F. Supp. 2d 453, 458 (S.D.N.Y. 2004)("he must allege facts

demonstrating both that plaintiff's injury is to his business or property—and not physical,

emotional or reputational harm or any economic aspect of such harm").

>  ### ii.  *No personal damages*

On Counts I and II, JF sues DW, but United does not.  (Para. 298, 307).  However,

nowhere in the complaint does JF suggest what damages he has suffered in his business.  Instead,

he lists, for pages, instances in which he claims people canceled deals with United Realty or the

REIT.  There is no allegation or suggestion that his salary was cut or that he suffered any

personal damages.  Cf. <u>Reich</u> v. <u>Lopez</u>, 38 F. Supp. 3d 436, 450 (S.D.N.Y. 2014) (plaintiff

alleged that as result of false statements, he himself lost $40,000 per month in payments).

In <u>Reich</u> v. <u>Lopez</u>, 38 F. Supp. 3d 436, 450 (S.D.N.Y. 2014), the Court explained

that damage to one's reputation is not RICO injury, absent concrete business damages:

Courts commonly differentiate in this fashion between insufficient claims of general reputational injury and sufficient claims of actual economic losses stemming from a harmed reputation. See Cement–Lock v. Gas Tech. Inst., 2007 WL 4246888, at *26 (N.D.Ill. Nov. 29, 2007) ("[I]njury to business reputation is compensable under RICO, if it results in concrete economic, contractual, or business losses.... Plaintiffs point to a specific lost business opportunity.... This is sufficiently concrete to confer RICO standing.") (internal quotation marks omitted); Hy Cite Corp. v. badbusinessbureau.com, L.L.C., 418 F.Supp.2d 1142, 1151 (D.Ariz.2005) (recognizing that the injury requirement is met when "[p]laintiff alleges that it has lost [specific] customers, that customers have rescinded [specific] sales contracts, and that Plaintiff's reputation has been injured as a result of the contents of Defendants' website"); Philatelic Found. v. Kaplan, 85 Civ. 8571(RWS), 1986 WL 5629, at *11 (S.D.N.Y. May 9, 1986) (although "[p]ecuniary damage to business reputation [appears] to raise difficult problems of proof, [this] type of damage has been included within the 'injury to his business' requirement of § 1964(c)"), abrogated on other grounds by Aramony v. United Way of Am., 969 F.Supp. 226 (S.D.N.Y.1997)....

The plaintiff corporate entities also cannot claim that damage to their own reputation -- by reason of actions directed against JF -- as constituting RICO injury. Such injury can only constitute RICO injury where the damage to the company was the intended consequence; here all the supposed disparagements against Frydman were not directed against United Realty.[50]  In Aramony v. United Way, 969 F. Supp. 226, 232 (S.D.N.Y. 1997), the Court explained this distinction:

Relying on Securitron Magnalock Corp. v. Schnabolk, 65 F.3d 256 (2d Cir.1995), UWA argues that its expenditure of fees to mitigate reputational damages constitutes a cognizable RICO injury. In that case, the Court of Appeals let stand a jury's finding that plaintiff suffered damages including $150,000 in lost profits, $100,000 in out–of–pocket expenses, and $100,000 in "injury to reputation and/or loss of goodwill." Id. at 262. While Securitron does indicate that damage to a company's reputation can comprise a sustainable RICO injury, it does not create a per se rule that reputational damage always constitutes RICO injury. The plaintiff in Securitron succeeded because the underlying predicate acts included deliberate

---

[50]  Any boilerplate pleading to the effect there was an intent to harm the company is entirely unsupported by any factual pleading and therefore would not meet the plausibility test.

and fraudulent misrepresentations designed to malign the plaintiff's reputation in the marketplace as a lock manufacturer. See id. at 258–62. The damage contemplated by the predicate acts was reputational injury to the plaintiff, thus fulfilling the proximate cause requirement of Holmes.

The nexus between the predicate acts and the alleged reputational damage in this case is far more tenuous. UWA's RICO allegations relate exclusively to Aramony's efforts to spend UWA's money on various personal extravagances and his subsequent efforts to conceal that spending. To satisfy Holmes, UWA would have to allege that the reputational damage it suffered in the wake of Aramony's malfeasance, and after Aramony's termination, was the intended result of Aramony's embezzlement scheme. It does not. On the contrary, it appears from the pleadings that UWA's timely injuries were merely a result of the public's mistrust of UWA's remaining management and the poor oversight record of UWA's board. See Counterclaim at ¶¶ 23–32.

Accordingly, Frydman lacks standing and has not shown RICO injury.

### IV.
### The state court counts are meritless, and should not be entertained

In Count XII Prime United sues DW for "tortious interference with existing contractual or business relations." Complaint Para. 407 et. seq. The allegations as against DW are stated at Para. 421 - 426, and appear to assert that DW tortiously interfered and caused a breach of the agreement.

However, it is undisputed that the purchaser terminated the contract, as they had the right to, when FINRA failed to give it approval (Wright Aff. Ex. F)[51]; thus the purchaser did not breach the contract. Thus, DW cannot be liable for procuring a breach, as alleged in Para. 422. Since the buyer had the right to terminate, the contract became a contract terminable at will by Purchaser. Under NY law, there is no cause of action for tortious interference with an at-will contract.

Assuming that the seller is complaining that its sale contract was *not* enforceable

---

[51] Frydman gave DW this document as part of a sanctions motion in state court.

– merely a prospective relationship -- NY law would require a showing that plaintiff cannot

make:  "To prevail on a claim for 'tortious interference with business relations' under New York

law, a party 'must prove that (1) it had a business relationship with a third party; (2) the

defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted

solely out of malice, or used dishonest, unfair, or improper means; and (4) the defendant's

interference caused injury to the relationship.' " Darby Trading, Inc. v. Shell Intl. Trading, 568 F.

Supp.2d 329, 342 (S.D.N.Y. 2008).

   In any case, since the transaction required FINRA approval, and FINRA did not

give its approval, plaintiff fails to explain how its damages were caused by DW.  There is no

allegation that DW induced FINRA not to approve, nor that DW had any contact with FINRA.[52]

   Finally, as set forth above, the filing of a lawsuit is absolutely privileged under

New York law.

***V.***

***Documentary evidence may be submitted***
***in support of the motion to dismiss***

   In Cortec Industries, Inc. v. Sum Holding, L.P., 949 F.2d 42, 47 (1991), the

Second Circuit explained:

> [T]he complaint is deemed to include any written instrument attached to it as an
> exhibit or any statements or documents incorporated in it by reference. ***
> In addition, we have held that when a plaintiff chooses not to attach to the
> complaint or incorporate by reference a prospectus upon which it solely relies and
> which is integral to the complaint, the defendant may produce the prospectus
> when attacking the complaint for its failure to state a claim, because plaintiff

---

[52]  Perhaps we will learn in Frydman's next draft, or his next frivolous lawsuit that the

powerful Peekskill lawyer, David Wright, controls FINRA.  It would be as plausible as anything

else written by Frydman.

-33-

should not so easily be allowed to escape the consequences of its own failure.

See also <u>Brass</u> v. <u>American Film Technologies, Inc.</u>, 987 F.2d 142, 150 (2d Cir.1993) (court may

consider "documents attached to the complaint as an exhibit or incorporated in it by reference, ...

matters of which judicial notice may be taken, or ... documents either in plaintiffs' possession or

of which plaintiffs had knowledge and relied on in bringing suit."); <u>Chambers</u> v. <u>Time Warner,</u>

<u>Inc.</u>, 282 F.3d 147, 153 (2002) ("Because this standard has been misinterpreted on occasion, we

reiterate here that a plaintiff's reliance on the terms and effect of a document in drafting the

complaint is a necessary prerequisite to the court's consideration of the document on a dismissal

motion.... Even where a document is not incorporated by reference, the court may nevertheless

consider it where the complaint 'relies heavily upon its terms and effect,' which renders the

document 'integral' to the complaint.... And plaintiffs cannot willfully close their eyes to

documents in their possession that are integral to their claims") *quoting* <u>International Audiotext</u>

<u>Network, Inc</u> v. <u>American Telephone & Telegraph Co</u>., 62 F.3d 69, 72 (2d Cir.1995) ("

International Audiotext") (per curiam)).); <u>In re Lyondell Chemical Co.</u>, 491 B.R. 41, 50

(S.D.N.Y. 2013) ("[A] complaint is "deemed to include any written instrument attached to it as

an exhibit or any statements or documents incorporated in it by reference." .... And the Court may

also consider, on a motion to dismiss (and without converting the motion to one for summary

judgment) "documents attached to the complaint as an exhibit or incorporated in it by reference,

... matters of which judicial notice may be taken, or ... documents either in plaintiffs' possession

or of which plaintiffs had knowledge and relied on in bringing suit" .... though with respect to a

document in a plaintiff's possession or as to which it has knowledge, only so long as the plaintiff

relied on any such document in drafting the complaint, .... or knowingly chose to characterize the

document, without attaching it, in a manner to its liking.")

### *Conclusion*

Accordingly, the Second Amended Complaint should be dismissed as to this defendant.

Dated: August 28, 2015                    DAVID O. WRIGHT, ESQ.

*David O. Wright*
_____
By: David O. Wright DW6856
1012 Park Street
Peekskill NY 10566
(914) 245-0455
Defendant pro se

-35-